## No. 1,220.

V. & A. Meyer & Co. vs. Vicksburg, Shreveport and Pacific Railroad Company.

When a railroad company equips its engines with the most effective modern and practical appliances to prevent the escape of fire, the burden of proof is on the party alleging damage by fire from the escape of sparks, and to render the company liable the proof of negligence must be positive, strong and convincing.

Where a railroad company erects a platform for the purpose of shipping cotton, and its course of business is such that induces parties to store cotton on it under a promise to ship by by the next freight train, and it passes and neglects to take on said cotton, and it is destroyed by fire by the company's passing train, after the freight which ought to have taken it on has passed, the company is liable for the value of the cotton.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

---

*C. J. & J. S. Boatner* for Plaintiffs and Appellees.

---

*Stubbs & Russell* for Defendant and Appellant.

---

The opinion of the Court was delivered by

McEnery, J. V. & A. Meyer, a commercial firm domiciled in the city of New Orleans, sue the defendant company for $2536 97, with 5 per cent. interest thereon from legal demand, and the value of fifty-four bales of cotton which had been placed upon defendants' platform at a flag station for shipment, and which was destroyed by fire while awaiting shipment.

Plaintiffs allege the cotton was destroyed by sparks emitted from one of the engines of the defendant company; that said company was grossly negligent in failing to use on its engines the necessary appliances to prevent sparks from escaping, and that the engine which passed the platform on which the cotton was placed was not supplied with a spark arrester and improved appliances to prevent the escape of fire. And that said company was also grossly negligent as a common carrier in allowing the cotton to remain on the platform for several days, exposed to fire from passing trains, after having been notified of its storage on the platform for the purpose of shipment by the defendant company.

The defendant company denies each and every allegation of the plaintiff; denies the delivery of said cotton to respondent's agent, or that it had received it in its care or custody; denies that said cotton was burned through any fault or negligence of the company, and affirms that its engines are furnished with improved appliances and operated by experienced, skilled and careful men.

There was judgment for the plaintiff for the amount claimed and the defendant company has appealed.

There is, as is usual when questions of fact involving liability are at issue, conflicting testimony.

According to the various impressions of witnesses on the day and at the time when the train passed, which it is alleged set fire to the cotton, the wind was from the north or the south, the day was cool, clear and dry, or it was damp, murky and misty. But the cotton was piled and stored on the south of the railroad track, and it took fire and burned, notwithstanding the wind blew towards the north, and it was rapidly consumed, although it was a damp day. It took fire almost immediately after the train passed, and upon no hypothesis can the fire be explained from facts in the record except that it took fire from sparks emitted from the passing locomotive drawing the passenger train.

The engine was provided with a spark arrester of the most improved kind. With an engine so equipped with effective appliances to prevent the escape of fire, although the authorities are conflicting in the jurisprudence of this country as to the company's liability, we think the weight of authority is that where such equipments are applied to engines, the burden of proof is shifted upon the plaintiff, and the testimony must be very positive, strong and convincing to establish the fact of negligence on the part of the company. Without stating the testimony of the witnesses on this point, its effect is to show that the employees of

the road used every precaution to prevent the escape of fire while passing the platform where the cotton was stored.

On the second point presented by plaintiffs that the defendant company had negligently allowed their cotton which had been placed upon the platform for shipment to remain there an unreasonable length of time, which occasioned its destruction and loss by fire, we are of the opinion that the following facts are established by the testimony : that the platform upon which the cotton was placed was located at a flag station, which had been erected for the convenience of shipping cotton from the King place, upon which the cotton was raised; that the course of business here adopted by the company was the same as at other flag stations. That the cotton is placed on the platform, the agent is notified, and the train is flagged to take it on, and at this particular station the agent of plaintiffs would notify the railroad agent in Monroe when a shipment of cotton was to be made, who would cause the train to stop there and take it. He notified the conductor of the next freight train to stop at the station and receive the cotton from the person who had charge of it, to whom the conductor would receipt for the same and from whom he would receive shipping directions. The plaintiffs' agent and manager of the King plantation, which they had leased, notified the railroad agent at Monroe in writing of his intention to ship the cotton when it was at the platform, partly on it and a portion on the ground. He sent also a verbal message which was delivered to the company's agent by one of the company's conductors of a local freight train on Tuesday morning, the day preceding the fire of the cotton being at the flag station ready for shipment. It remained on the platform for at least twenty-eight hours. The plaintiffs had a man at the flag station to flag the train and to give necessary shipping instructions.

On Tuesday night a freight train passed, and although flagged, failed to stop. No satisfactory explanation is given of this failure to stop and take the cotton, except that it was a through train which passes at night and does not stop at the flag stations.

Defendant's agent, however, swears, and it is not contradicted, that he usually shipped at night. It is not shown that it was not in the power of the defendant company to transport the cotton from the time it was stored until destroyed. Plaintiffs' gin house was only a short distance from the station, and it is not reasonable to suppose that they would have risked their cotton from a place where it was insured to one where it was not without reasonable grounds for believing that it would be immediately placed on defendant's car. The defendant company by the course of business inaugurated by it and the special inducements

offered to plaintiffs, invited plaintiffs to put their cotton on the platform at the time they did, and it was the duty of the company not to depart from its usual course of business and neglect to take the cotton on the next freight train.

The defendant company alleges that there was no delivery of the cotton to them and there was no liability on its part either as warehousemen or carriers.

The company built the platform and provided its own arrangement for the care and protection of freight. It had no agent there, it is true, but the agent at Monroe was constructively present, whenever he was notified that cotton was placed on the platform for shipment, under the course of business adopted by the company, for the purpose of shipment by the next train. The liability of the company to plaintiffs in the present case, rests solely on their failure to ship at the proper time. If they had complied with their obligations, the cotton would have escaped destruction.

There were three bales of the fifty-four damaged by the fire. The plaintiffs had a right to abandon them to the company. These three bales were brought to Monroe and tendered to the company's agent, who refused to receive them. The company is liable for their full value, as they have not been accounted for since they were tendered.

Judgment affirmed.