(48 South. 432.)

No. 17,090.

THOMASON v. KANSAS CITY SOUTHERN RY. CO. et al.

(Jan. 18, 1909.   Rehearing Denied Feb. 15, 1909.)

1. RAILROADS (§ 469*)—FIRE SET BY LOCOMO-
TIVES—LIABILITY.

A railroad company, on certain terms and conditions, constructed a spur track on its own property, but adjoining a planing mill belonging to the plaintiff. In that contract, the plaintiff agreed to release the company from any and all liability for property destroyed by fire communicated by locomotives operating on said track or otherwise while engaged in work connected with the use of said track, under that agreement. The railroad company was not, under that clause of the agreement, relieved from liability for property destroyed by fire occasioned by sparks emitted from one of its locomotives while on the main track not engaged in work connected with the use of the spur track.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 469.*]

2. RAILROADS (§ 480*)—FIRE SET BY LOCOMO-
TIVE—BURDEN OF PROOF.

It being shown that the fire by which plaintiff's property was destroyed was caused by sparks emitted from one of the defendant's locomotives then on the main line, the defendant carried the burden of proof to show that the locomotive was then engaged in work connected with the use of the spur track.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 480.*]

3. RAILROADS (§ 480*)—FIRES SET BY LOCO-
MOTIVE—EVIDENCE.

Where a building, near a railroad track is destroyed by a fire occurring a few minutes after a locomotive emitting sparks has passed opposite to it, and sufficiently near for the sparks to have communicated the fire, these two facts

furnish the legitimate basis for presumption that the fire was occasioned by the sparks, in the absence of any other assignable cause.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1713; Dec. Dig. § 480.*]

4. APPEAL AND ERROR (§ 1010*)—REVIEW—
QUESTIONS OF FACT.

If there be testimony in the record which if believed would justify the conclusions of the trial judge touching a certain fact, conclusions in respect to that fact will be adopted, unless manifestly erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3979; Dec. Dig. § 1010.*]

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by W. J. Thomason against the Kansas City Southern Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Alexander & Wilkinson, for appellants. Edgar Williamson Sutherlin and Thomas Charles Barret, for appellee.

Statement of the Case.

NICHOLLS, J. Plaintiff seeks in this suit to obtain a judgment in solido against the Kansas City Southern Railway Company, and the Kansas City, Shreveport & Gulf Railway Company for $6,633, with legal interest from judicial demand.

The demand is one sounding in damages for the alleged destruction of plaintiff's planing mill and machinery appliances, and lumber and building materials therein, and stacked on the planing mill yards situated at or near Vivian station in Caddo parish, on the line of railroad, on September 14, 1906.

The petition averred that the line of railway through the parish of Caddo was built and equipped, and is owned by, the codefendant, Kansas City, Shreveport & Gulf Railroad Company, and that it was controlled, managed, and operated by the other defendant, under some sort of contract and

agreement or arrangement between them which was in the possession of said two railway companies, and that plaintiff was therefore unable to state the exact substance, purport, and contents of the agreement between said two railway companies, under which the one company was managing, controlling, and operating the line of railroad owned by the other company.

The legal question involving the solidary liability of the two companies for the amount sued for was eliminated from any further discussion or investigation in the consideration of the case. For it was admitted at the inception of the trial that if either company was liable, the other was also liable, as follows:

"It is admitted by the defendants in this case that the line of railway referred to in plaintiff's petition is owned by the Kansas City, Shreveport & Gulf Railway, and was operated during the year 1906 by the defendant the Kansas City Southern Railway Company, and that if either of said companies, defendants, is liable for the damages claimed in plaintiff's petition, the other company is also liable in solido therefor."

Plaintiff alleges in his petition, in substance, as follows:

That during the year 1906 he owned and operated a sawmill plant, buildings, machinery, fixtures, and appliances for the sawing and manufacture of lumber and planing, dressing, matching, and finishing the same, all of which were situated on or near the tracks or side tracks of said line of railway, and which was above and north of, and a short distance from, Vivian depot or station; and

That on September 14, A. D. 1906, in the forenoon of the said day, the Kansas City Southern Railway Company, through the torts, faults, carelessness, and negligence of its officers, agents, servants, and employés in charge of, managing, controlling, and operating the locomotive and engine attached to and propelling a train of freight cars on said line of railway, and passing and moving by or near to his said sawmill and planing mill, set fire to said sawmill and planing mill, and the same, with the buildings, fixtures, and tools, appliances, and improvements pertaining thereto, together with a considerable amount of manufactured lumber and other personal property and materials, located and stacked there on the mill yards awaiting shipment, were set on fire and that all of said property was thereby totally destroyed and consumed by fire, and the same was a total and complete loss to plaintiff, and

That the destruction of said property by fire, as aforesaid, was not due to any fault or negligence on his part, but that the fire originated and was created and set out and communicated to said property, whereby it was totally consumed and destroyed, as aforesaid, through the torts, faults, and carelessness and gross negligence of the officers, agents, servants, and employés of said Kansas City Southern Railway Company; and

That said freight train, controlled and operated by the servants and employés of said Kansas City Southern Railway Company, was drawn and propelled by said locomotive and engine, using steam as the motive power, the steam being generated and produced by fire, which was kept and maintained burning in said moving engine or locomotive which was moving, drawing, and propelling said train of freight cars; and

The plaintiff's sawmill and planing mill were situated and located adjacent to, or in close proximity to, the main track of said railway, or to the right of way thereof, and not more than 80 feet distant from said main track of said line of railway; and

That said locomotive and engine used for drawing and moving and propelling said train of freight cars, while moving and passing on the main track of said line of railway adjacent and opposite to, and in close proximity to, plaintiff's said sawmill and

planing mill, emitted, discharged, blew out, and threw out cinders, sparks, and fire from said engine or locomotive, and the smokestack thereof, and thereby set fire to plaintiff's mills, roofs, sheds, or buildings thereof, or to lumber or other materials adjacent and in close proximity thereto, and fire was thereby communicated to said planing mill, its roofs, sheds, buildings, and improvements, and to the manufactured lumber' on the yards of the planing mill and tramways and on the yards of the sawmill and to the sawmill, its sheds, roofs, buildings, and improvements, machinery, fixtures, and appliances adjacent and attached and connected with the same and in close proximity thereto, and that all of said property was totally destroyed and consumed by fire; and

That said engine or locomotive was not efficiently or properly constructed, and was not supplied or equipped with such scientific improvements and proper and necessary appliances as would have prevented the discharge and emission of cinders, sparks, and fire therefrom, as aforesaid, and the consequent setting out of fire to, and the destruction of, his said property by fire, as aforesaid; and

That said engine or locomotive was not provided, supplied, or equipped with an adequate and sufficient spark arrester, and that the pretended spark arrester thereon was in bad condition and in a bad state of repair, and was old, dilapidated, torn, broken, and worn, and the body or portion thereof separating and connecting the small meshes or holes therein for the discharge through the same of smoke and steam were in many places worn, torn asunder, and broken away, so that there were large holes in said pretended spark arrester through which large cinders, sparks, and fire were emitted, discharged, thrown out, and blown out through the said holes in said pretended spark arrester, and through and out of said smokestack; and

That on account of the worn, torn, and broken condition of said pretended spark arrester, and its condition and bad state or repair, as aforesaid, it was not adequate or sufficient to prevent the discharge, emission, and escape of cinders, sparks, and fire from said locomotive and engine and the said smokestack thereof; and

That at the time of said fire it was a dry season, there having been no rain or moisture in that locality, and in that place, for several weeks prior to that time, and the ground and combustible materials thereon at that place, and the buildings, sheds, roofs, and lumber, such as were destroyed as aforesaid, were very dry and quick and easy to ignite and burn; and

That on the day and at the time his said property was destroyed by fire, in the forenoon of the 14th of September, 1906, it was a windy day, and the wind was high, and blowing with considerable force and velocity, and blowing from the direction of said main track of said railway on which the locomotive and engine moved and passed, and in the direction where said planing mill, sawmill, and other property destroyed by fire, were situated and located, as aforesaid; and

That the servants and employés operating the locomotive at the time the fire was set out, whereby plaintiff's property was destroyed did not control, manage, and operate the same with skill, prudence, or caution, but operated it at the time negligently and carelessly; and

That at the time while the locomotive was passing and moving on the main track in front of, and opposite to, plaintiff's property, the servants and employés in charge of and operating said locomotive were carelessly and negligently using an unusual and unnecessary force, quantity, and volume of steam, whereby an unusual quantity and amount of cinders, sparks, and fire were discharged, driven, and blown out from the

locomotive and smokestack thereof with great and unusual force, and to great and unusual distances; and

That the locomotive which caused the fire and the destruction of plaintiff's property on account of its bad and improper construction, and the bad condition and bad state of repair of the spark arrester, and on account of the negligent, careless, and improper handling and operation thereof, had habitually, about the time plaintiff's property was burned, and subsequent and prior thereto, thrown out, blown out, and discharged cinders, sparks, and fire therefrom in its movements along said line of railroad, and said locomotive had frequently and habitually scattered fire and set out fires along the line of said railroad, and which was well known to the officers and agents of said Kansas City Southern Railway Company.

On January 23, 1907, plaintiff filed an amended and supplemental petition correcting the original petition in this: That it was through the error and inadvertence of his attorney that it was alleged that the sawmill, its buildings, sheds, improvements, fixtures, and appliances and lumber on the said sawmill yard were destroyed by fire, when in point of fact the sawmill, its buildings, sheds, improvements, fixtures, and appliances and lumber on the sawmill yard were some distance from the planing mill yard, and separated therefrom, and that the fire was not communicated to the sawmill, its buildings, sheds, improvements, fixtures, and appliances, nor to lumber on the sawmill yard, but that the only property destroyed by the fire was the planing mill, its buildings, improvements, sheds, tramways, fixtures, tools, implements, and appliances, and the lumber stacked in the planing mill and on the planing mill yards.

Defendant, after pleading an exception of no cause of action, denied generally all of plaintiff's allegations. It denied specially that the fire in question was caused by them, or that any of the engines of the defendant Kansas City Southern Railway Company was then, or had been, in a defective condition and averred that it used, on the occasion in question, the latest and best-approved apparatus, without a defect, and that same was carefully handled by an experienced engineer, and it denied that the fire could have been caused by the escape of sparks from its said engine. But, should it be held that said fire was caused by defendants, then and in that event they showed that such fire was caused while the said engine was working in and around and on the switch, which was constructed to plaintiff's plant under a special agreement that defendants should not be responsible for any fires caused thereby, or while working around or thereat, a copy of which agreement is hereto annexed and made a part hereof; that under this agreement it is exempt from any loss or damage which the said plaintiff might have sustained, which exemption it specially pleaded.

The case was tried before a jury, which by a vote of nine to three returned a verdict in favor of the defendant. On application of the plaintiff for a new trial the verdict of the jury was set aside, and a new trial was granted. By subsequent consent the case was tried before the district judge without a jury.

The district court rendered judgment in favor of the plaintiff and against the defendants in solido for the sum of $6,600, with 5 per cent. per annum interest thereon from the date of its judgment.

The defendants have appealed.

## Opinion.

The agreement referred to in the defendant's answer in its tenth section declared that the party of the second part (the plaintiff company) hereby further stipulates and

agrees that, in consideration of the agreement herein contained, to be kept and performed by the said railway company, it will and does hereby release the said railway company from any and all liability for property destroyed by fire communicated by locomotives operating on said track, or otherwise, or while engaged in the work connected with the use of said track, under this agreement, and will indemnify, protect, and forever save harmless the said railway company from any and all such claims, liabilities, damages, or claims for damages. The said party of the second part hereby assumes all risk of fire caused as aforesaid, and all liability for property destroyed by fire caused by or contributed from locomotives operating upon said track, or engaged in work connected with the use thereof. Any person or corporation having insurance against fire on property so destroyed by fire shall, upon payment of such insurance, have only the same rights as insured has under this agreement. Said second party hereby further agrees to release, and does hereby release, the said railway company from any and all liability for damages for any injuries which may incur or be done to the property of said second party by the said railroad company, or its employés while operating locomotives and cars upon said track, and under this agreement, whether said property be loaded upon the cars or not.

The following questions are submitted to this court for decision:

(1) Did or did not sparks from one of the locomotives of defendant companies cause or occasion the fire by which the property of the plaintiff, near Vivian depot, was consumed and destroyed?

(2) If it was so destroyed, where was the locomotive when such sparks escaped from it, and what was it, at that time, engaged in or doing?

(3) If plaintiff's property was destroyed by a spark escaping from one of defendant companies' locomotives, would the defendant companies be released from their liability for such act by reason of the terms and conditions of the written agreement, pleaded in defendants' answer, if, but for said agreement, they would be liable?

(4) If defendants are liable in damages for that act, what is the amount for which they are liable?

Plaintiff's planing mill, and the other property belonging to it, for which he seeks to recover damages for loss by fire, was situated in the vicinity of Vivian depot in Caddo parish, La., near the defendants' railroad tracks. The general direction of tracks at that point was north and south. Plaintiff's planing mill, which was situated about 300 yards above and north of Vivian depot, near a spur track running out or from the main track in a southwesterly direction and on the east side of that track.

Plaintiff's sawmill was about 180 feet further above the planing mill, and slightly northeast from it, and some distance further from the railroad's tracks than it was.

On the morning of the 14th of September, 1907, the regular local train plying between Shreveport and Texarkana, drawn by engine No. 140, passed Vivian going north from Shreveport to Texarkana. When that train reached Vivian, there were three loaded cars on plaintiff's short spur track leading from the main track alongside of the tramway or loading platform of plaintiff's mill.

When the local train reached Vivian depot, the agent informed the conductor that there were three loaded cars standing on the spur track, which should be taken out and put on the main track for transportation. The engine and three cars were cut off from the train, were backed in on the side track or passing track at Vivian, and one empty car thereon was coupled thereto, and the engines and cars attached were pulled up

above the mill spur and backed down and coupled up with the three loaded cars then on the mill spur, and they pulled off the short spur to the main track, and the engine with the loaded cars which were pulled in from Vivian, and the three loaded cars which were taken off from the spur track, were backed down to the Vivian depot. At that place, after some switching and readjustment of the train, it pulled out from Vivian, and went north on its regular trip to Texarkana, going beyond, and passing on its way, the junction of the main track with the spur track, the train being pulled by engine No. 140. A short time after it had left Vivian on its way to Texarkana (the time being estimated from 10 to 15 minutes) plaintiff's planing mill situated near the spur track was discovered to be on fire, and was burned to the ground, together with other property.

The plaintiff contends that it was on the final departure of this engine and cars from Vivian, and when on its way to Texarkana, on the main track and on its regular trip to Roma, that sparks were thrown out from the engine, while passing opposite to the planing mill, setting the mill on fire and causing it to be destroyed; that the distance from that point to that where the fire was first seen was only about 60 feet; that the wind was then blowing towards the northwest away from, and not towards, the plaintiff's planing mill; that there was no other cause assignable for the fire; that the spark arrester on the engine was defective, and had repeatedly set fire to buildings and fences beyond its right of way; that the short interval between the passing of the engine and the discovery of the fire gave rise to a legal presumption of cause and effect.

Defendant denies that the fire was caused by sparks from its engine at any point, but maintains that, should the fire have been caused by them, they were not thrown out after the train had finally left Vivian and was on its regular trip to Texarkana.

Both parties concede that the locomotive at no time went upon the spur track, but from its position on the main track pulled the cars out which were on it. Defendant contends that when the engine left Vivian to go to the spur track, it had no other purpose than to take from it the loaded cars which were upon it and place them on the train, and therefore, when the engine had taken them off, its return to Vivian became necessary, and became part of work done by it in connection with the spur track, and solely because of such work.

Defendants ascribe the burning of plaintiff's property to fire from burning shavings (or sparks from the same), which shavings had been set fire to by the plaintiffs at a point near the railroad tracks, and which was communicated from that point to plaintiff's planing mill. Plaintiff meets this theory by evidence tending to show that the shavings referred to were few; that they had been set fire to the day before; that the fire from the same had been entirely extinguished, but, if not entirely extinguished, it consisted of embers covered by ashes, from which sparks could not be thrown out; that the space between the spot where the shavings had been burned was ground which had been cleared off, and there was nothing through which fire could be communicated to plaintiff's property; that had the fire from the shavings been communicated to plaintiff's property, it would have started at the north end of the planing mill, and not at the southwest end of the building, and with no smoke visible until the fire at that end had broken into flame; that the distance from the spot where the shavings were burnt to plaintiff's buildings was ——— feet away in a northerly or northeasterly direction from them; that defendant itself contended that the

wind at the time was from the south to the north; that between the place where the shavings had been burned and plaintiff's buildings there were high piles of lumber, to which the fire would have been first communicated and shown itself.

The evidence was conflicting as to the direction of the wind at the time of the fire, but all parties agree that it was then blowing from the south towards the north. The disagreement between the witnesses on that point was as to whether it was blowing towards the northwest or towards the northeast. We do not think, under the evidence as a whole, that the fire at plaintiff's mill could be attributed to having been communicated from the burning shavings. We think the distance of a locomotive from a point opposite to the place at which plaintiff's mill was set on fire was sufficiently close to have authorized the court to connect the emitting of a spark from the locomotive with the immediately succeeding fire at plaintiff's planing mill. Several persons testified to fires having been communicated, from sparks emitted from defendants' locomotive, to objects beyond the right of way, at distances varying from 25 feet to 180 or 200 feet and that sparks from engine No. 140 had done so.

This court, in Brady v. Jay, 111 La. 1074, 36 South. 132, recognized that sparks from locomotives could communicate a fire to a building 150 feet away. We will leave for a moment the question as to whether the evidence warranted the finding by the trial judge that the fire was caused by a spark from the locomotive of the defendant, and pass to the question as to where the locomotive was, and what it was doing, when the sparks were emitted, on the assumption that they did cause the fire which destroyed plaintiff's property. On that assumption we think where there is conflict in the testimony as to the point at which the sparks were emitted from defendants' locomotive, and as to what

the locomotive was then engaged in, that the burden is on the defendant to establish affirmatively the state of facts which would entitle it to claim exemption (under the written contract which defendant sets up in its answer) from liability.

Concerning the scope of that agreement, plaintiff, as we have stated, contends that the agreement does not release, or purport to release, defendant companies from liability to plaintiff for fires communicated to his property from its locomotive, in the general operation of the railroad at Vivian depot, or other places, and in no way connected with the use of the spur track for the purposes provided in the agreement.

In the third edition of Thompson on Negligence, published in 1901 (section 2237), the author, under the heading Railway Companies may Contract against Liability for Fires Communicated by Their Locomotives, says:

"There is no principle of public policy which prevents a railway company from entering into a contract with a property owner by an instrument under seal, or by an instrument founded on a good consideration, whereby it shall be exonerated from liability to the property owner for damages caused by fire communicated from its locomotives, even though caused by the negligence of its servants, provided the agreement contains no provision which in no way involves the relation of the railroad company as a common carrier to the other contracting party or to the public. For example, a stipulation in an instrument whereby a railway company leased to another a strip of land upon its right of way, to be used for a storage warehouse, by which the railroad company is exempted from any liability for damages caused by fire emitted from its locomotive engines, even though caused by the negligence of the company or its servants, has been held valid. So where, in such an instrument of lease, the lessee assumes 'all risks of fire from any cause whatever,' the risk of fire due to the negligence of the lessor or its servants is assumed by, and cast upon, the lessee. The rule is the same where there is a statute making railroad companies absolutely liable for all damages caused by negligent fires set out by their locomotives. It has been well said that the public has no interest in the question whether the railroad company or a lessee who erects buildings on the right of way shall bear the loss resulting from negligence of the railroad company's servants so as to raise any question of public policy in respect to a contract exempting the company from such liabil-

ity. But such a clause in a lease of ground for the purpose of erecting a building for the storage of grain does not extend so far as to exempt the railroad company from liability for the destruction, by fire communicated from its locomotives, of grain stored in the building owned by persons who are not parties to the lease. Where the owner of cotton stored in a warehouse erected by him on the land of a railroad company has entered into a contract with the company releasing it from liability for damages from fire, an insurance company which has insured the cotton for the benefit of the owner, and which has paid the loss, cannot, on the theory of subrogation, have an action against the railroad company to recover the amount so paid. So, where a railroad company occupied under a statute the position of an insurer against loss by fire communicated by its engines, it was not liable for loss occasioned thereby to partnership property contained in a grain building owned by one of the parties who had, by contract with the company, assumed all risk of loss by fire."

The text of this section refers, in a note at the bottom of the page, to the following cases in support of the text: Griswold v. Illinois Central Railway Co., 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647; Savannah Ins. Co. v. Pelzer Mfg. Co. (C. C.) 60 Fed. 39; Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co. (C. C.) 62 Fed. 904; Id., 70 Fed. 201, 17 C. C. A. 62, 30 L. R. A. 193; Id., 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84.

In Greenwich Ins. Co. v. L. & N. R. R. Co., 112 Ky. 599, 66 S. W. 411, 67 S. W. 16, 56 L. R. A. 477, 99 Am. St. Rep. 313, the Supreme Court of Kentucky in 1902, since the publication of the third edition of Thompson, rendered a decision similar to those rendered in the cases cited.

Plaintiff's counsel say that the federal cases mentioned were all based upon the duty of federal courts, in matters of local law, to follow the rulings of the Supreme Courts of the different states, and therefore those decisions are not independent original decisions of the Supreme Court of the United States or other federal courts, on the questions, but rest upon and follow the state court decision.

The decision in Griswold v. Railroad Company, in favor of the railway company's exemption, was rendered by the Supreme Court of Iowa on a rehearing, and reversed the one originally rendered.

In the first opinion the court quoted Cooley on Torts (3d Ed.) pp. 1485, 1486, as saying:

"The cases of carriers and telegraph companies have been specially mentioned because it is chiefly in these cases that such contracts are met with. But, although the reasons which forbid such contracts have special force in the business of carrying persons and goods, or of sending messages, they apply universally, and should be held to defeat all contracts by which a party undertakes to put another at the mercy of his own faulty conduct."

It also referred to 86 Va. 975, saying:

"In Johnson's Adm'x v. Richmond & D. R. Co., 86 Va. 975, 11 S. E. 829, the administrator sought to recover damages for the death of his intestate, which was claimed to have been caused by the negligence of the railway company. The decedent had been a member of a firm of quarrymen, which agreed with the railway company to remove a certain granite bluff from its right of way. He was killed by a train of the company while he was engaged in doing the work required by the agreement. There was evidence which tended to show that the accident was caused by negligence on the part of the company. It claimed exemption from liability, however, on the ground that the agreement provided that it should 'in no way be held responsible for any injuries to or death of any of the members of the said firm, or any of its agents or employés, sustained from said work should such death or injury occur from any cause whatsoever.' The court, in commenting on this provision of the agreement said:

"'To uphold the stipulation in question would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void. Nothing is better settled, certainly in this court, than that a common carrier cannot, by contract, exempt itself from responsibility for his own or his servant's negligence in the carriage of goods or passengers for hire.'"

Plaintiff differentiates the cases quoted from the one before the court, on the ground that their building is not on defendants' right of way, nor upon property leased to it by the railway company. They maintain that the companies, in their operations on the main line (general operations not connected with operations on the spur track), defendants, occupied quoad the plaintiff the same

position as they did to any other person. To that contention we give our assent.

There is conflict in the evidence as to the condition of the spark arrester of engine No. 140 on the 14th of September, while operating at Vivian and its vicinity. We are satisfied under the evidence that it was defective at that time, and that defendant companies were negligent in making use of it in the condition that it then was; that it was, at the time of passing plaintiff's planing mill, throwing out sparks to an extent that a spark arrester in good condition would not have allowed; that the fireman improperly and incautiously increased the danger of the situation by increasing the fire at the engine just before reaching plaintiff's mill, which was not many feet distant from the track, and in sight.

We return now to the question as to whether sparks from the spark arrester on the defendants' engine caused the fire. There is no other attributable cause for it. As we have stated, we cannot accept the theory of the defendant that it was occasioned by the burning shavings. A locomotive passing and emitting sparks (at a distance from buildings which have been shown and have been recognized as sufficiently near for those sparks to have been the means of communicating fires) and a fire occurring at a building directly opposite, just after the passing of the locomotive, furnish facts on which to base a reasonable presumption that the sparks caused the fire. Defendant urges that the direction from which the wind was blowing precludes the idea that the sparks reached the building. The testimony is conflicting on that point. The fickleness of the wind is proverbial; it changes frequently and rapidly at the same place. There is evidence in the record which, if believed, would justify the conclusion reached by the trial judge.

We are not able to say in the present case, under the evidence adduced, that he manifestly erred.

If the fire was in fact caused by sparks from the defendants' engine, we do not understand them to seriously contest the extent of the loss suffered.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and the same is, affirmed.