Judgment set aside, and suit dismissed, at plaintiff's cost.

LECHE, J., takes no part.

(76 South. 620)

No. 22133.

TORTORICE v. YAZOO & M. V. R. CO.

(June 30, 1917. Rehearing Denied Oct. 29, 1917.)

*(Syllabus by the Court.)*

RAILROADS ⟜482(4) — FIRES — DEFECTIVE SPARK ARRESTER—EVIDENCE—SUFFICIENCY.

When it is admitted by the defendant, in an action for damages for the destruction of property alleged to have been set on fire by sparks from the defendant's locomotive, that the locomotive could not have discharged sparks or burning cinders large enough to set fire to a building as far away as the plaintiff's house was from the railroad track if the spark arrester in the locomotive had been in good order and repair, and the evidence shows conclusively that sparks from the locomotive did set fire to the house, the conclusion is that the spark arrester was not in good order or repair, and that the defendant is liable.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Antonio Tortorice against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff, and defendant appeals, and plaintiff, answering the appeal, prays that interest be allowed from judicial demand. Judgment affirmed.

Hunter C. Leake, Lemle & ·Lemle, and Arthur A. Moreno, all of New Orleans (Charles N. Burch. and H. D. Minor, both of Memphis, Tenn., of counsel), for appellant. Lazarus, Michel & Lazarus and David Sessler, all of New Orleans, for appellee.

O'NIELL, J. The plaintiff sued for $3,-928.28, damages for the destruction of his property, which, he alleges, was set on fire by sparks emitted from a locomotive of the defendant company. He charges that the defendant was negligent in failing to have the locomotive equipped with an effective spark arrester; that, if the equipment was originally efficient for arresting dangerously large sparks, the defendant neglected to keep it in such repair as to prevent the emission of dangerous sparks; and that the danger to the plaintiff's building, near the railroad right of way, was increased by the carelessness of the fireman of the locomotive, in putting in fuel and increasing the volume of sparks when the engine was coming near the building, pulling a heavy freight train up grade.

The defendant denies that the fire was caused by sparks from the locomotive; denies that the engine was not equipped with an efficient spark arresting apparatus at the time of the fire; and denies that the property destroyed was of the value claimed.

The district judge, having heard the evidence, and having reopened the case to hear additional testimony on behalf of the defendant, rendered judgment in favor of the plaintiff for $3,835.53, with legal interest, from the date of the judgment. The defendant prosecutes this appeal. The plaintiff, answering the appeal, prays that interest be allowed from judicial demand, according to Act No. 206 of 1916.

Opinion.

The defendant relies upon the doctrine announced in Meyer v. V. S. & P. Railroad Co., 41 La. Ann. 639, 6 South. 218, 17 Am. St. Rep. 408, and affirmed in Gumbel v. I. C. Railroad Co., 48 La. Ann. 1180, 20 South. 703, that, when a railroad company has equipped its locomotives with the most effective modern and practical appliances to prevent the escape of dangerous sparks, the burden of proof is on the plaintiff claiming damages suffered by fire alleged to have been caused by escaping sparks, to prove the cause of the fire; and to render the railroad liable in such case, the proof of its negligence must be positive and convincing. The defendant relies also upon the ruling in Dudley v. St. Louis, I. M. & S. Railway Co., 133 La. 81, 62 South. 413, that the burden of proof rests upon the plaintiff, in a case like this, to show, either by direct evidence or by circumstantial evidence sufficient to furnish a basis for a reasonable inference, not only that the fire followed the passage of the train, but that it was the consequence of some negligent act of commission or omission on the part of the defendant in that connection.

The plaintiff, on the other hand, relies upon the doctrine announced in Thomason v. K. C. Southern Railway Co., 122 La. 995, 48 South. 432, and affirmed in Lemann Co. v. T. & P. Railway Co., 128 La. 1089, 55 South. 684, that the circumstances (1) that a fire started on the roof of the plaintiff's building a few minutes after the defendant's locomotive passed near enough to discharge sparks upon the house, (2) that there was no fire in the building, or nearer than the fire in the locomotive furnace, and (3) that the setting fire to the building could not be explained or accounted for otherwise than on the theory of sparks from the locomotive, are circumstances sufficient to establish the conclusion that the building was set on fire by sparks from the locomotive. And the plaintiff also relies upon the doctrine announced in Fuller v. Chicago, R. I. & P. Railway Co., 137 La. 997, 69 South. 804, that, when it is shown that sparks or burning cinders emitted from the defendant's locomotive set fire to the plaintiff's building, the burden of proof shifts to the defendant to show that its locomotive was equipped, so far as it was reasonably possible, to prevent the emission of sparks or burning cinders, and that it was handled prudently and with due regard to the surrounding conditions.

The plaintiff in this case proved beyond all reasonable doubt that the fire was caused by sparks discharged from the defendant's locomotive. The plaintiff's building, on the roof of which the fire started, was a one-story wooden structure with shingle roof, situated 65 feet from the railroad track. The fire occurred in very dry weather, on a hot day in June. Just before the locomotive passed, pulling a long freight train up grade, the fireman shoveled coal into the furnace and increased the volume of sparks emitted from the smokestack. The train had stopped at the station at Lutcher, had left at 12:30 p. m., and had hardly got under full headway when the engine passed the plaintiff's building. The fire was discovered on the roof of the plaintiff's house 15 or 20 minutes after the locomotive had passed. Three witnesses testified that they saw large sparks or burning cinders discharged from the locomotive and falling about and upon the plaintiff's building when the engine passed. The reliability of that testimony, especially of two of the witnesses, was seriously impaired, if not altogether destroyed; but we do not consider it at all necessary for the conclusion that it was the sparks from the locomotive that set fire to the building. The circumstantial evidence shows, not merely that it was very proba-

ble that the fire was started by sparks from the locomotive, but that it was almost, if not quite, impossible for the fire to have originated from any other cause. There was no fire in the building, nor fire anywhere in the neighborhood as close to the building as was the fire in the furnace of the passing locomotive. The attic of the building was closed, empty, and unused. The men who went into the attic through a window in the gable end of the building immediately when the fire was discovered on the roof found no fire on the floor of the attic. The fire was then only in the shingles, laths, and rafters, or roof of the building.

There was no reason whatever for suspicion of incendiarism. The building was insured for less than half its value, and the stock of goods destroyed in it was not insured at all. The plaintiff, proprietor of the establishment, occupied a very unsuspicious position, dozing in a chair near the front window, when the train passed, and he knew nothing of the origin or cause of the fire. His brother also, who was in the rear part of the building, had no direct knowledge of the cause of the fire.

Other houses in close proximity to the plaintiff's building had been set on fire, on several previous occasions, under circumstances similar to those surrounding the fire in question. The previous fires were attributed to sparks from passing locomotives, and were not attributable to any other cause. As to the admissibility and force of such evidence, see Grand Trunk Railway Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356. It seems that such fires had occurred so frequently and under such similar circumstances in the plaintiff's neighborhood that, when the buildings destroyed were rebuilt, metal roofs were, almost invariably, substituted for the much cheaper shingle roofs. The plaintiff followed that example when he rebuilt his house.

An employé of the defendant company, whose duty it was to inspect all of the defendant's locomotives in the roundhouse in New Orleans, testified that he inspected the locomotive in question, and found the spark arresting equipment in good condition, on the day before and on the day after the fire. But the evidence shows that the inspections were only cursory performances that were not by any means certain to disclose a defect existing in the spark arresting apparatus. The defendant produced and filed in evidence a new piece of metal screen, such as was used in the spark arresters on all of the defendant's locomotives. But the defendant did not prove that a thorough inspection was made of the spark arresting equipment of the locomotive in question after the fire. We are of the opinion that the defendant should have made a thorough inspection of the spark arresting equipment in question after the fire, in view of the fact that the train dispatcher's record shows that the fire was reported to him by the telegraph operator at Lutcher at 12:50 p. m.; that is 20 minutes after the train had passed the plaintiff's house.

The district foreman of the locomotive and car department of the defendant company testified—and the defendant admits it is true—that a locomotive equipped with a spark arrester of the design used by the defendant company, in good order and repair, could not throw burning cinders or sparks of such size as to set fire to a building 65 feet away from the locomotive. The purpose of that evidence was to prove that the fire in question was not caused by sparks from the defendant's locomotive, and it would have served the purpose if the defendant had then also proven that the spark arrester on its locomotive was in a safe and sound condition at the time of the fire. However, from the admission that the locomotive could not have set fire to the plaintiff's

building if the spark arrester had been in good order and repair, it follows logically either that the locomotive did not set fire to the building, or that the spark arrester was not in good order or repair. Between those alternatives, there is no doubt that the spark arrester was not in good order or repair, because it is quite certain that sparks from the locomotive did set fire to the building.

The amount of the judgment appealed from is the value of the property destroyed, according to the undisputed evidence; and there is therefore no reason for amending the judgment.

Act No. 206 of 1916, providing that interest thereafter should be allowed from judicial demand on judgments for damages arising ex delicto, was not in effect when the plaintiff's cause of action arose. In fact the statute was enacted after the judgment was rendered and signed. The law has no retroactive effect. On the contrary, it provides expressly that "legal interest shall, hereafter, attach from date of judicial demand," etc. Hence there is no merit in the appellee's demand for interest on the amount of the judgment from judicial demand.

The judgment appealed from is affirmed at the cost of the appellant.

LECHE, J., takes no part.