The application for a mandamus is therefore denied.

================

(86 South. 894)

No. 22829.

**LUIKART v. YAZOO & M. V. R. CO.**

(Jan. 3, 1921).

*(Syllabus by the Court.)*

1. **Railroads** &#x25CE;&rarr;482(2)—**Evidence held to show locomotive spark ignited field and barn.**

In an action against a railroad for setting fire to plaintiff's barn by igniting his hayfield, evidence *held* to sustain the trial court's finding that a spark from the railroad's locomotive ignited the hayfield, and that the fire did not originate in the barn.

2. **Railroads** &#x25CE;&rarr;480(2) — **Presumption from fire that spark arrester was not in repair.**

It being shown that the fire which destroyed plaintiff's barn was caused by sparks from defendant railroad's locomotive, the presumption is that the spark arrester on the locomotive was either not in repair or not efficient.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by Carl B. Luikart against the Yazoo & Mississippi Valley Railroad Company.

From judgment for plaintiff, defendant appeals. Affirmed.

Lemle & Lemle and Arthur A. Moreno, all of New Orleans (W. S. Horton and R. V. Fletcher, both of Chicago, Ill., and Hunter C. Leake, of New Orleans, of counsel), for appellant.

J. S. Atkinson, of Shreveport, and Taylor & Porter, of Baton Rouge, for appellee.

O'NIELL, J. Defendant appeals from a judgment for damages for the value of the contents of a barn, consisting mainly of farming implements, destroyed by a fire alleged to have been caused by sparks from a locomotive of the defendant railroad company. There is no dispute about the value of the property destroyed. The only question is whether plaintiff has proven by a preponderance of evidence that the fire was caused by sparks from the locomotive.

Plaintiff was a tenant or lessee of a farm on the north side of the railroad. There was a public road running parallel with the railroad, between it and the farm. On the morning of the fire, the wind was blowing moderately from the southeast. The weather was clear and dry. In fact there had been no rain for a period of 18 days. Plaintiff's field was covered with dry hay, in windrows extending northward from the road. The south side of the field was 60 or 70 feet from the railroad; and the barn, in which the implements were stored, was, by actual measurement, 445 feet north from the railroad. There was a house in the southeast corner of the field, facing west, occupied by the wife of an employee of the defendant. Five or 10 minutes after the train had passed, the woman came out upon her porch and saw that the hayfield was afire on the south side. The fire was spreading rapidly toward the north. Plaintiff, with several farm hands, was in the field on the north side of the barn, more than 400 yards north from the road. The

woman who discovered the fire ran northward across the field to give the alarm to plaintiff and his farm hands. He had already seen the smoke, and, fearing that his field was afire, had mounted his horse and was coming to investigate. He and the woman met near the barn. Seeing that the fire was spreading rapidly toward the barn, he rode back and called the farm hands to save the barn. When they arrived the fire had reached the barn, and it was impossible to save it.

There was no one in the barn when the fire started. The man who was last in the barn, and who had left it about two hours before the fire started, testified that he did not smoke, and did not know of any condition that could have started a fire in the barn. There is no other theory upon which the origin of the fire can be accounted for excepting that it was set out by sparks from the locomotive.

The only evidence offered by the defendant to show that the spark arrester in the locomotive was efficient and in good condition is the testimony of the engineer and fireman who were operating the locomotive. The engineer testified that his engine was in perfect condition and working well. He and the fireman both testified that he had shut off the steam, and that the train was therefore running on its own momentum, "coasting" or "drifting," as it is called in railroad parlance. The engineer testified that the locomotive could not have been emitting sparks while the throttle was closed, especially as the train was a very light one, consisting of two passenger coaches and a baggage car. The testimony of these witnesses, however, was given 16 months after the occurrence referred to, and it appears from their testimony that they were speaking more from their knowledge of their custom in passing that particular place than from an effort of their memory. The engineer admitted that the train might have been using very little steam when it passed plaintiff's field; and it is quite certain that the fireman, who was sweeping the cab floor at the time, could not have known whether the throttle was entirely closed or not. Be that as it may, the main question of fact at issue in this case was whether the fire originated in the south side of the field or in the barn. Defendant produced three witnesses, two of whom were employees of the railroad company, who witnessed the fire from a switch engine, after the train had passed. These witnesses were under the belief that the fire had started in the barn and had spread southward over the field. The witnesses did not see the fire until it was well under way, and therefore might have been mistaken as to the place of its origin. On the other hand, we cannot conclude that the fire originated in the barn and spread southward, without assuming that the testimony of the plaintiff and his witnesses was willfully false. They could not have been mistaken in their statement that they saw the fire in the south side of the field before it had spread to the barn. The fireman and engineer on the locomotive that is supposed to have set out the fire admitted that they did not see a fire at the barn or in the field when the train passed. In fact, it is not disputed that the fire was not seen by any one until 5 or 10 minutes after the train had passed.

[1] There is no dispute of the fact that the fire spread over the entire field, and that it spread swiftly. The only question is whether it spread from the south side of the field to the barn or from the barn to the south side of the field. The fact that the wind was blowing from the southeast corroborates the testimony of plaintiff and his witnesses, and discredits that of the defendant's witnesses, in that respect. On the main question at issue, therefore, the case is one in which the district court had to decide, either that the witnesses for the defendant were mistaken or that the plaintiff and his witnesses committed

willful perjury. The judge who saw and heard the witnesses giving their testimony, and perhaps had some knowledge of their character or reputation, was in a better position than we are to decide the question of fact as to the place where the fire originated; and, after a careful review of the evidence, we see no reason for reversing the judge's conclusion on that question of fact.

[2] It was virtually conceded by the testimony of the engineer who operated the locomotive that it would not have emitted sparks of sufficient size and heat to set out the fire if the spark arrester had been in good condition. Having concluded that the fire was caused by sparks from the locomotive, the presumption is that the spark arrester was either not in repair or not efficient. Meyer & Co. v. Vicksburg, Shreveport & Pacific Railway Co., 41 La. Ann. 639, 6 South. 218, 17 Am. St. Rep. 408; Lemann Co. v. Texas & Pacific Railway Co., 128 La. 1089, 55 South. 684; Tororice v. Yazoo & Mississippi Valley Railroad Co., 142 La. 229, 76 South. 620; Palmetto Moss Factory v. Texas & Pacific Railway Co., 145 La. 555, 82 South. 700.

The judgment appealed from is affirmed, at appellant's cost.