(92 South. 717)

No. 23882.

## HOPKINS v. LOUISIANA RY. & NAV. CO.

(June 27, 1922.    Rehearing Denied July 17, 1922.)

*(Syllabus by the Court.)*

1. Evidence ⚖=574—Positive evidence that locomotive started fire held to prevail over theory that it could not do so.

Positive and direct testimony as to facts must prevail over a theory which is shown to be not beyond dispute and therefore merely an opinion.

*(Additional Syllabus by Editorial Staff.)*

2. Damages ⚖=188(2)—Evidence held to support amount of judgment for damages from fire.

In an action for damages caused by fire, evidence *held* to support a judgment for $3,500 for the loss of a residence, eight outhouses, 200 panels of fence, two cisterns, and some shade trees.

3. Estoppel ⚖=4—That owner of property destroyed by fire had undervalued it for taxation does not prevent full recovery.

That the owner of property destroyed by fire started by a railroad engine had undervalued the improvements on his place in filing his return with the assessor of taxes did not prevent recovery of their value as shown by the evidence.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Jas Andrews, Judge.

Action by Edward Hopkins against the Louisiana Railway & Navigation Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, and Thornton, Gist & Richey, of Alexandria, for appellant.

Bruton T. Dawkins, of Alexandria, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

ST. PAUL, J. This is an action for damages. Plaintiff claims that defendant's locomotive set fire to the dry grass upon its track and right of way, which spread to his field and destroyed his buildings, etc. On the main issue, to wit, the liability vel non of the defendant, the question is as to the *sufficiency* of the evidence to support the judgment below in favor of plaintiff.

## I.

[1] Two witnesses, William Sly and McKinley Sly, testify that they saw the fire immediately after the locomotive passed, and saw that it started on the track; they were about 400 yards from the spot. Waites Harper also saw the fire start immediately after the locomotive passed, and shortly afterwards investigated and found that it had started on the track. All three testify that there was no person at or near the point of origin at the time. Plaintiff investigated the burnt area next day, and found that the fire had originated on the track. Lee Hadnot saw the fire immediately after the locomotive passed, and shortly afterwards went to see if there was any danger to his own field; at that time the fire was down in the ditch on the other side of the track from him, and there was no danger to himself. He says the fire did not start on the track, but in the ditch; but Harper says that Hadnot did not go within 200 feet of where the fire started. J. H. Lawrence and Victor Lawrence testify that they saw the locomotive about the same time, and saw it set fire to the track a few miles further on, which fire they succeeded in extinguishing.

There is evidence on the part of the defense that the locomotive was an oil burner and in good condition, and that such a locomotive with steam up cannot set fire to anything on the track. The witness Harris, says, however:

"I don't know of but one reason how or why an oil-burning locomotive could set fire to the track while in motion, and that is by dropping a piece of coke or carbon."

There is rebuttal evidence by a member of the bar (not connected with this case, who some years before had considerable experience with oil-burning locomotives) that such locomotives *can* set fire to the track even with steam up, and that such a locomotive *had* set fire to the bridge at Alexandria, which had to be extinguished by the fire department.

## II.

If the witnesses for plaintiff are credible (and they seem disinterested, and were believed by the trial judge who heard and saw them) then the above should suffice as proof that the fire was started by the locomotive. For they testify to *facts* and their testimony is opposed only by a theory, which theory is shown to be *not* beyond dispute and therefore merely an opinion.

In Edrington v. Railroad Co., 41 La. Ann. 97, 6 South. 19, several witnesses testified that the fire started in a barn about 150 feet from the track some five minutes after a locomotive passed emitting sparks. This court said:

"Had plaintiff rested his case here it might possibly be claimed that the judgment rendered is justified; but it is difficult to conceive how, in presence of all the counter proof adduced by the defense, such judgment can be sustained."

This counter proof was to the effect that the locomotive was equipped with the most modern type of spark arrester which, prevented the emission of any but the tiniest sparks, which could not live after traveling more than 40 feet through the air. All of which, the court found, showed "the physical impossibility of the occurrence under the circumstances charged."

But in the same volume of reports we find another case (Meyer v. Railroad Co., 41 La. Ann. 640, 6 South. 218, 17 Am. St. Rep. 408), wherein it was held that the fact that a locomotive was properly equipped served only to shift the burden of proof more strongly to the plaintiff, and that even then, circumstantial proof sufficed. The court said:

"It [the cotton] took fire almost immediately after the train passed, and upon no hypothesis can the fire be explained except that it caught from sparks emitted by the passing locomotive."

See, also, Lemann v. Railroad Co., 128 La. 1089, 55 South. 684, and Luikart v. Railroad Co., 148 La. 349, 86 South. 894, holding that—

"Evidence that the fire started (1) immediately or soon after the passage of the train, (2) that there was no fire in the vicinity of the premises before, and (3) that there was no other apparent cause for the fire, is sufficient to warrant an inference of fact that the fire was emitted from the railway company's engine."

In this case, however, there is no reason to resort to any inference. The testimony of the two Slys is direct and positive that the locomotive started the fire; and it is corroborated by the equally direct and positive evidence of the two Lawrences that it again set fire to the track a little farther on; to say nothing of the other testimony. The conclusion is therefore irresistible, either that the locomotive was *not* properly equipped, or that it was not properly operated.

## III.

[2] Plaintiff claimed $5,200 for the loss of a residence, eight outhouses, 200 panels of fences, 2 cisterns, some shade trees, and some alleged damage to the soil. The last item is not proved, and for the other items the district judge allowed $3,500.

Plaintiff and an expert called in his behalf testified that it would cost more than amount claimed to replace the burnt buildings, and that the buildings as they stood were worth nearly as much as if new. This is not contradicted except, in a general way, by one witness who testified that the buildings had

depreciated considerably and could not have cost plaintiff when they were built as much as he claimed. But this witness puts no value on the buildings, admits that he took part in an estimate made at the time which placed the loss at $3,500, and that his subsequent advice to plaintiff to take $1,800, if he could get it, was based partly on the uncertainty and delays of lawsuits.

This estimate of $3,500 made at the time, was made with the assistance of the defendant's section foreman, which, however, we mention only to show that it was made in good faith, and not that defendant is bound thereby. And it was sent to defendant's claim agent, who promised to investigate the claim, but never did so.

It was this estimate which the trial judge adopted; and from the evidence in the record we think it as correct as any other which we might make; it is certainly not excessive.

### IV.

[3] It is claimed that plaintiff filed a sworn return with the assessor of taxes for that year, in which he placed the value of the improvements on his plantation at less than $1,200, and that he should be allowed no more. Which, on the other hand, plaintiff explains by saying that other taxpayers were doing the same thing, and that his return was fair in proportion to theirs.

Be that as it may, the evidence shows that the improvements were well worth the sum allowed by the district judge, and, granting that plaintiff did as he should not have done, yet we know of no authority in the courts to impose upon plaintiff any penalty other than that (if any) imposed by the law, or in a manner different from that required by law.

### Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by the WHOLE COURT.