No. ——

First Circuit

PERKINS v. YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY

(April 1, 1926, Opinion and Decree)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Railroads—Par. 93.**
Where a fire was caused by sparks from a locomotive igniting sage grass and broom straw on the railroad right-of-way, which had been cut by the railroad company but not removed, the railway company is negligent and liable for the resulting damage.

Appeal from the Parish of West Feliciana, Hon. Chas. Kilbourne, Judge..

Action by James G. Perkins against Yazoo and Mississippi Valley Railroad Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

E. S. Muse, of St. Francisville, attorney for plaintiff, appellee.

Jas. H. Kilbourne, of St. Francisville, and H. H. Kilbourne, of Clinton, attorneys for defendant, appellant.

MOUTON, J.   Plaintiff sues defendant company in damages for $1300.00 for the destruction of timber, canebrakes, pas-

tures and fencing on his plantation alleged to have been caused by fire set by one of defendant's trains. The judge below rendered judgment in accordance with the verdict of a jury for $1000.00 in favor of plaintiff, from which defendant appeals. In this court plaintiff asks for an increase in the judgment to $1300.00, the amount originally claimed.

The train which is alleged to have caused the fire runs from Woodville, Miss., to Slaughter, La., each morning, and returns in the afternoon. It passes through what is known as Burrus Cut, which is situated between St. Francisville and Slaughter. This Cut is deep and is bordered on each side by small hills as was described by the witnesses.

At the time of the fire, October 27, 1924, the land adjoining this Cut was covered by sage grass and broom straw which had grown to the height of some four or five feet. The sage grass and broom straw which had likewise grown in the Burrus Cut along defendant's track had, at that time, been cut by defendant company, but had not been burned or removed. This fact is well established by a preponderance of the evidence.

The train claimed by plaintiff to have set the fire which spread from this Cut to his adjacent property passed through this Cut at about 10:55 in the forenoon of October 27, 1924, according to the testimony of E. H. Stegar, engineer of defendant company. Josh Haney, a witness for plaintiff, it is true, says he passed about 400 yards from this Cut on his way to Bayou Sara at about 11 o'clock in the forenoon of October 27, and that he saw no fire in the Cut. It will be noticed that the train in question had passed through the Cut about the same time or a few minutes before. If set by sparks emitted from the engine it had only started when Haney passed along there, and due to the high banks on each side of the Cut could not have been seen by Haney. Another witness for plaintiff, Henry Stewart, whose house was about a mile from the Cut, also says he did not see any fire then in the forenoon of October 27. No doubt, his view was also obstructed by the hill or bank on the side of the Cut, and he could not therefore see any fire, although it could have been smouldering at that time. It is also true that Stegar, the engineer, says he did not see any fire in the Cut when he went through it on that morning, but this is explained by his statement that in running his train he could set fire without ever knowing it as he "would be ahead of it all the time." In the afternoon of the same day, about 2 o'clock, Haney, on his way back from Bayou Sara, saw fire in the Cut, and Stegar, the engineer, on reaching the Cut about the same time on his return trip from Slaughter says the fire had then spread from the Cut and was climbing to the top of the hill side. The engineer says he was furnished with another engine at Slaughter on the day of the fire. The reason was, he says, that the conductor said the "engine was throwing fire". He says he had changed engines three or four times the year before which occurred every time the conductor would "find a fire". Asked, point blank, whether he had caused the fire, the engineer answered: "I don't think I did, but I may have, though." It was shown besides that several fires had occurred along the track of the defendant company and in the vicinity of the fire in question. With such facts, and testimony of that character, we have no hesitancy in concluding that if

the engine was equipped with a spark arrester of a modern or improved type, the arrester was in bad condition, and was certainly not effective. This case is, therefore, not covered by the case in Meyer & Co. vs. V. S. & P. R. R. Co., 41 La. Ann. 639, 6 South. 218, in which it appeared that the engine was equipped with effective appliances to prevent the escape of fire, and where the court held that in such cases the proof is shifted on the plaintiff, "and the testimony must be very positive, strong and convincing to establish the fact of negligence on the part of the company". We have no doubt from the evidence that the engine threw fire or emitted sparks which fell along the track when it passed through Burrus Cut in the forenoon of the day in question. The sage grass and broom straw had been cut and were laying near the track. It must have been quite thick as it appears that it had a growth of about four or five feet. The rational inference is that this sage grass or broom straw was ignited by the passing train and that the fire smouldered there until about two in the evening, when it spread to the side of the track, climbing the hill side, and finally reaching out to the contiguous land of the plaintiff, inflicting the damage complained of.

. We find that the amount of $1000.00 allowed below is a fair and equitable estimate of the damages suffered which should not be either increased or reduced.