### REED et al. v. ANDREPONT.
### No. 995.

Court of Appeal of Louisiana. First Circuit.
June 8, 1932.

George K. Perrault, of Opelousas, for appellant.

Dubuisson & Dubuisson, of Opelousas, for appellee.

MOUTON, J.

Plaintiff leased a small tract of land to defendant, Albert Andrepont, for the year 1931, on a rental of one-third of the crop. Supplies were furnished defendant by Levy Campbell to make the crop. Seven bales of cotton and some corn raised on the premises were seized under a writ of sequestration obtained jointly by Reed and Campbell.

Judgment was rendered in favor of Reed, lessor, for one-third of the crop, and recognizing Campbell's privilege on the other two-thirds; directing the sale thereof by the sheriff, and that Campbell be paid out of the proceeds by preference over all other creditors.

Martin Andrepont, son of Albert Andrepont, intervened herein, claiming that in December, 1930, he was employed by his father as a farm laborer to make the crop of the current year, 1931, on the premises leased from James A. Reed, one of the plaintiffs.

He is asserting his privilege of a laborer, claiming his right to payment out of the proceeds of the crop by preference over the liens of plaintiffs, Reed, as lessor, and Campbell, as furnisher of supplies.

Intervener, Martin Andrepont, his wife, and his father, Albert Andrepont, testify, that intervener was employed as a laborer on the farm for 1931 at $120, with board and lodging, clothes for himself and wife, for the year, to be paid out of the money realized from the sale of the crop. It is shown that he performed the usual work of a laborer until practically the total harvesting of the crop and up to the time of the seizure. There is no direct evidence and no facts or circum-

stances to overcome the testimony of intervener and of his witnesses that he was employed in that capacity by his father, and, in view of the facts that he rendered the ordinary services of a farm laborer in making the crop, we are of the opinion that he has established his right to claim a privilege as a laborer.

This lien asserted by intervener under the provisions of Act No. 89, 1886, page 127, outranks the privilege of the lessor and furnisher of supplies claimed by the plaintiffs.

Intervener is therefore entitled to a preference on the proceeds of the crop seized, unless he be debarred from recovery under the pleas of waiver and estoppel urged against him by the plaintiffs.

The evidence shows that defendant, Albert Andrepont, lessee, did not have the means to cultivate the crop without obtaining supplies.

Reed testifies that Albert Andrepont and Martin Andrepont, intervener, could not get supplies anywhere and wanted to know if he could make the advances, and that both expressed their willingness to sign up any security to get the supplies, and that intervener joined his father in offering a guaranty for the advances. Reed says he would not comply with their request, and advised that they lease another place.

The testimony of Campbell, furnisher of supplies, is that early in March, 1931, Albert Andrepont, in company with Martin Andrepont, intervener, applied to him for supplies to enable him to make the crop in question. He testifies that Albert Andrepont said he had come at the suggestion of Savoie who told him that Campbell might make the advances; that Albert Andrepont said he could get along easily with advances up to $75 or $80 for the year, and that he agreed to furnish him supplies up to the sum of $80 for the year.

Campbell testifies that Albert Andrepont said, "If you want any security, draw up any kind of crop lien you want, and my son and wife and all will sign"; and that the intervener, Martin Andrepont, was standing by when that statement was made by his father; that Martin Andrepont did not utter a word, and that his father said they would work the crop together and would pay one-third for the rent, then pay the grocery bill, and divide the difference between them.

The next morning, Campbell says, he saw his son-in-law, Reed, who said he was glad he would make the advances, and said, "When I collect my rent I will collect all," but required that the advances should not exceed $80. His further statement is that both Albert Andrepont and his son said that he would be paid.

W. E. Campbell, son of Levy Campbell, plaintiff, says, in a conversation with Albert Andrepont in January or February, the latter told him he thought he would not be able to make his crop, as he could get no advances, and said he would give a crop lien or bill of sale, that his wife, son and the latter's wife, would sign up to pay the grocery bill, and, after paying that, would divide the rest.

The proof is that Albert Andrepont was a tenant, without means, and who could pay for the supplies only from what he could realize from his prospective crop, was not an attractive customer, which accounts for Reed's requirement that Campbell's advances should be limited to $80 in amount.

It is equally apparent, from the record, that Albert Andrepont was eager for these advances, as was no doubt his son and his wife who were to be fed and clothed for the year from the expected supplies. This statement is justified by the fact, as testified to by Campbell and not contradicted, that the morning after he had arranged with Reed for the guaranty, that Martin Andrepont, intervener, and his wife came in a wagon for the supplies.

The defendant, Albert Andrepont, and the intervener both deny that the facts testified to by Reed, Levy Campbell, and W. E. Campbell, his son, above extensively referred to, are true. Their testimony contradicts in every particular the statements of plaintiffs, and W. E. Campbell, their witness.

The district judge gave credence to the testimony of the plaintiffs and of their witness. There are three witnesses for plaintiffs, and two for defendant, the wife of intervener having testified only in reference to the laborer's agreement between her father-in-law and her husband. All the witnesses are equally interested in the result of the suit, with the majority of one in favor of plaintiffs.

The rule is, however, as we have had occasion to heretofore say, that the probative value of testimony is not to be gauged by the number of witnesses testifying in the case. Although this be true, the situation of the parties and the conditions existing as reflected in the record are properly taken into consideration in weighing the evidence of witnesses. Here, there can be no doubt that Albert Andrepont was in extreme want of supplies, and very eager to get them, and that his son likewise desired to obtain the advances. It is therefore logical to believe that they were willing to give any security required, and to promise entire protection to the lessor of the premises, and to the furnisher of supplies.

The district judge evidently took that view of the case and accepted as true the version given of the contested issues by plaintiffs and their witness. The district judge, besides, knew the witnesses, and had the advantage of hearing them testify, and

186

of noticing their demeanor on the witness stand, of which this court is entirely deprived.

The lower court believed plaintiffs and their witness, and there are no facts or circumstances in this record affecting their credibility, which is put at issue only by the contradictory statements of defendant and intervener. And we certainly cannot say that the court has fallen into an error in giving its approval to the testimony of plaintiffs and their witness.

Campbell in his testimony said that the intervener never mentioned that he had a contract with his father payable in preference to his claim. If he had, Campbell says, he certainly would not have made the advances, and we entertain no doubt that this statement is true. In connection with that statement, it is proper to refer to what he further said that defendant and intervener both said that Campbell would be paid, and also that defendant Albert Andrepont said, in the presence of intervener who kept silent and made no protest, that Reed would get his one-third of the crop, and that the rest would be divided between them.

These statements and the foregoing, to which we have referred, lead us to the consideration of the pleas of waiver and estoppel which present the vital issues submitted for solution.

Counsel for intervener refers us to Bacchus v. Moreau, 4 La. Ann. 313; A. Adler & Co. v. Burton, 46 La. Ann. 380, 15 So. 156, which hold that renunciations or relinquishments of privileges arising by operation of law must be express or result by cogent implication; the waiver should not be deduced from inference, but only from the consent of the person in whose favor it exists, express or plainly implied, and that the burden of proof to show this renunciation or waiver is upon the party against whom it militates.

In this case there was no express waiver or renunciation by intervener of his privilege as a laborer which he is now asserting. It is different, however, in reference to his waiver by implication.

When his father, in his presence, told Campbell that one-third of the crop would go to Reed, lessor, that Campbell would be paid for his supplies, and that the rest would be divided between them, to which intervener urged no objection whatsoever, by his silence he acquiesced in that offer. In addition to that, when he joined his father in the statement that Campbell would be paid, the result therefrom "by cogent and clear implication" was that intervener would not claim a lien against the crop under his contract of employment.

We say that a waiver of his lien resulted therefrom because it would be illogical and unreasonable to say that he was willing to have the lessor guaranteed for his share, and would bind himself also to pay the debt of the furnisher of supplies, and at the same time retain his legal rights under his lien.

In addition to that, as we have said above, we have the plea of estoppel urged against intervener. In the case of Taylor Co. v. N. Y. & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379, 380, the court said: "A person, who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and to act accordingly, is estopped."

When Albert Andrepont guaranteed the rights of the lessor and Campbell in the presence of the intervener, it was then incumbent on the latter to speak out about his contract or to show that he had some rights against the crop. Instead of claiming any interest therein he remained perfectly silent. More than that, he promised with his father to pay Campbell for the supplies. Hence, intervener, by his silence, acts, and actual representations, intentionally, or through culpable negligence, induced the plaintiffs to believe "certain facts to exist and to act accordingly."

The fact that Campbell was so led to believe and act is shown by his testimony where he says he certainly would not have made the advances had he known intervener had a contract with Albert Andrepont as a farm laborer. See, also, on this subject, Reynolds et al. v. St. John's Grand Lodge, 171 La. 395, 131 So. 186, where it is held that, "person, who, by declarations and conduct, has induced another to injuriously alter his condition, is, as against such person, estopped from denying declarations or conduct."

Plaintiffs have therefore carried the burden imposed upon them by law and have sustained their pleas of waiver and estoppel against defendant, justifying the judgment rendered below in their favor.

Judgment affirmed.

ELLIOTT, J., (dissenting).

Campbell, as furnisher of supplies, and Reed, as lessor, had no contract with Martin Andrepont. If they had, he would have been made a party defendant. The waiver or renunciation of the privilege which exists by effect of the law, in favor of a farm laborer on the crop for the protection of his wages, should not be presumed; it must, if it is claimed to have been done, be proved by a preponderance of the evidence on the subject. If the district judge had stated, as grounds for his judgment, that he accepted and believed the testimony of Reed and Campbell, and disbelieved that of Albert Andrepont and Martin Andrepont, his son, I should not question his finding in that respect. But I do not see that he has decided the case on a question of veracity; it seems to me to be

rather based on the ground that the owner of the land and the furnisher of supplies should be preferred on the ground that Martin Andrepont had waived or renounced his privilege. The lower court does not find and the evidence does not show that the question of laborer's wages and the privilege which exists in favor of a farm laborer was ever discussed or mentioned at any time. Messrs. Campbell and Reed do not directly say that Martin Andrepont ever directly agreed to relinquish his privilege on the crop. They speak of things that Martin Andrepont did or said in a general way, usually as "they," meaning the father and son, but which allows too much latitude for certainty on the part of an interested witness. It is not likely that Campbell and Reed nor the Andreponts ever thought of the privilege of a farm laborer as existing on the crop in favor of Martin Andrepont until they were advised by counsel on the subject. The Civil Code, art. 1992, provides: "There are also rights which are merely personal, that can not be made liable to the payment of debts, and therefore no contract respecting them comes within the provision of this section; these are * * *, to money due * * *, or wages, or recompense for personal services."

There also exists the exemption provided for by Code Prac. art. 644 (Amended Act No. 184 of 1918). I do not see that Act No. 115 of 1928 has any bearing on the present controversy. To my mind the evidence does not justify holding that Martin Andrepont knowingly, intentionally, or otherwise waived or renounced in favor of Reed and Campbell the privilege which existed in his favor on the crop which as a laborer he had helped to make.

I think there should be judgment in favor of Martin Andrepont as prayed for and I therefore respectfully dissent.