The plaintiff, Mrs. Rose Trascher Shaddinger, widow of Aaron P. Shaddinger, and the administratrix of his succession, brought this suit to recover from the defendant, Joseph D. Albeanese, the sum of $1,000 which had been loaned to the latter by Shaddinger on February 23, 1940 and which, plaintiff claims, has never been repaid.
Albeanese admitted the original debt but contended that his liability to plaintiff is limited to the sum of $27 because he repaid to Shaddinger during his lifetime the sum of $973. He further set forth that, at the time the original debt was contracted, he and his wife pledged to Shaddinger certain jewelry belonging to them; that, since Shaddinger's death, he has tendered payment of the $27 balance due and demanded of plaintiff the return of this jewelry and that his tender and demand have been refused. Defendant deposited the sum of $27 in the registry of the court, praying that plaintiff be required to accept that amount as payment in full of his obligation and that she be ordered to deliver to him the jewelry held in pledge. Mrs. Albeanese, defendant's wife, joined in the demand of her husband and consented that the pledged jewelry be delivered to him upon payment of the balance due on the loan.
After a trial in the court below on the issues thus joined, the judge concluded that the defendant had paid on account of the original debt the sum of $970. He accordingly granted judgment in plaintiff's favor for $30 and further decreed that the defendant be recognized as the owner of the jewelry held in pledge to secure the debt and that, upon payment by him of the $30 due and owing, the jewelry be delivered to him. Plaintiff has appealed to this court from the decision below contending that the judge erred in finding that the defendant *Page 625 
paid anything on account of the loan. The defendant has answered the appeal and prays that the judgment be amended so as to condemn the plaintiff for costs of the lower court.
The original loan by Shaddinger to the defendant was admittedly made under the following circumstances. In the month of February 1940, Albeanese was in the employ of the American Brewing Company of New Orleans and had become short in his accounts with that company to the extent of $1,000. This shortage had to be made good and Albeanese and his wife, who was Shaddinger's sister, called upon Shaddinger for financial assistance. Shaddinger agreed to make the loan and, conformably on February 23, 1940, he issued his check to the American Brewing Company to cover the shortage of Albeanese and accepted in pledge, as security for the repayment of the loan, certain jewelry belonging to Albeanese and his wife.
The present controversy is limited to the question of whether this loan or any part of it was repaid to Shaddinger during his lifetime. It is the contention of the defendant that he actually paid, in various amounts and at various times, a total of $970 on account of his obligation and that he has proved these payments by convincing evidence. On the other hand, counsel for the plaintiff suggests that the trial judge erred in accepting the evidence tendered by the defendant as true and that the judge should have found that the testimony of the defendant and his witnesses was insufficient to sustain the plea of payment.
The evidence submitted by the defendant in support of this plea consists solely of parol testimony and he concedes that, under the provisions of article 2232 of the Civil Code, the burden was imposed upon him to prove the alleged payments to the satisfaction of the court.
Mrs. Albeanese was the principal defense witness. She testified, in substance, as follows: That on February 23, 1940, when the loan was made by her deceased brother, he informed her that he expected to be repaid in monthly payments within a year; that, in order for this to be done without inconvenience to him, he placed in her possession a savings account passbook No. 7701-S of the National Bank of Commerce, Treme Market Branch, issued in his name and instructed her to make deposits from time to time in his savings account so that the indebtedness would be liquidated in due course; that, at the time the passbook was delivered to her by her brother, there was a balance therein of $31.60 to his account; that she and her husband delivered to her brother the sum of $32 in cash to offset this balance of $31.60, with the understanding that, as soon as the balance in the book would reach $1,000 as a result of the deposits to be made by her, the jewelry which her brother had accepted in pledge would be returned to them and that, thereafter, in conformity with this agreement, she made the following deposits: On June 10, 1940, $25; on July 15, 1940, $25; on August 12, 1940, $20; on September 26, 1940, $15, or a total of $85. She further states that, on November 4, 1940 she was desirous of securing her jewelry because it was her birthday; that, at that time, she and her husband owed to the National Bank of Commerce a balance of $66 on a note of $800 made by them; that she had previously contacted the bank with a view of making a new loan in the sum of $800 and that the bank consented to lend her that amount of money; that she communicated with her brother and told him that, if he would sign the new note for $800 as an endorser, she and her husband would be able to repay the balance due him on the $1,000 loan which he had made to them; that he agreed to do so and that on November 4, 1940 she, accompanied by her brother, went to the National Bank of Commerce, made out the new note for $800 and received cash amounting to approximately $744, after deducting the balance due the bank on the old loan. She further declares that, after receiving this money, she telephoned her husband to meet her at the bank; that her husband, accompanied by his friend, one Garatie, drove to the bank in Garatie's car; that she and her brother met them and that her husband told her to give Shaddinger $450 on account of the indebtedness, stating that he could not pay the entire balance due because he needed the use of the rest of the money for other obligations incurred by him. She says that, when her husband informed her brother that he would not be paid in full, the latter seemed "peeved" but that he, nevertheless, consented to the arrangement and that she delivered to him four $100 bills and one $50 bill, which left a balance of $430 due to him on account of the $1,000 loan. The witness further asserts that, about two weeks later, she called up her brother and told him that she and her husband were ready to pay off the balance *Page 626 
of the loan amounting to $430; that Shaddinger came to her home and that her husband, in the presence of his friend, Garatie and herself, paid Shaddinger the sum of $400 in $20, $10 and $5 bills, leaving a balance of $30, as to which her husband told Shaddinger he could not pay on that evening because he needed the money for change in order to conduct a keno game which he and she were operating at that time. Mrs. Albeanese further states that, when she made the payment of $450 to her brother at the bank, she delivered to him the savings account passbook which he had previously given her for the purpose of making deposits on account of the indebtedness due and that her reason for doing so was because she felt that, inasmuch as she and her husband had decided to pay off the loan in large amounts, it would be unnecessary to continue the small deposits made by them. She also asserts that, after the $400 payment had been made and there was a balance due of $30 on the original loan, her brother came to her house one day (which was just a few weeks prior to his death) and told her that she owned a balance of $27 only on the loan and that, on that occasion, he delivered to her the savings deposit book and instructed her to make the deposit of this balance to his account, stating "Sister, for God's sake pay this $27 that you owe and let me get this off my mind"; that she replied "Well, Hon, I can't pay it to you now, but I will try to pay it to you for Carnival, because I want my jewelry for Carnival." She further says that, when her brother was shot and killed by his wife a few weeks later, she had the book in her possession and that she delivered it to the notary public, who took the inventory of her brother's succession and made claim of ownership to the jewelry which had been pledged to secure the loan.
The statement of Mrs. Albeanese respecting the alleged payment of $450 on November 4, 1940 and the payment of $400 a couple of weeks later is corroborated in all particulars by the evidence of her husband and his friend, Garatie. Her evidence as to the deposits made by her in her brother's savings account is supported by the bank deposit slips which she states are in her own handwriting.
The plaintiff in this case was, of course, in no position to rebut the evidence submitted by the defendant. She, however, testified that her husband told her that he loaned Albeanese $1,000 and that Albeanese had never repaid him. She also introduced other evidence to the effect that her husband's savings deposit book was in the pocket of a door of his car just prior to his death and that part of the jewelry claimed by Mr. and Mrs. Albeanese belonged to her husband. When the jewelry was offered in evidence, it was discovered that the watch of Mrs. Albeanese had been tampered with by someone (apparently the plaintiff since it was in her possession) and that the face thereof, bearing the name of Mrs. Albeanese, had been scratched.
While the statements given by Mrs. Albeanese, her husband and their supporting witness are in exact accord as to the time and place and the manner in which the payments to Shaddinger were allegedly made, the circumstances of the case are such as to cause us to doubt the verity of the happenings about which they related so fulsomely. The fact that the defendant is attempting to prove, by parol evidence, payments made to a party now deceased is, in itself, sufficient to arouse suspicion since such evidence is to be regarded as of the weakest type. No receipts for the alleged payments were requested of Shaddinger and the explanation of Mr. and Mrs. Albeanese, that none were obtained because of the close relationship of the parties, is not particularly impressive. Then, too, it seems quite strange that Shaddinger insisted on keeping the jewelry after the debt had been liquidated to a balance of $30 in view of the fact that defendant and his wife testified that Shaddinger did not want to accept the jewelry in pledge at the time he made the loan. In addition to this, the reason which prompted Mr. and Mrs. Albeanese to suddenly desire, in the month of November 1940, to make two large payments of $450 and $400 respectively, is not very convincing. Mrs. Albeanese says that the payment on November 4th was arranged because it was her birthday and she was anxious to wear her jewelry. But, notwithstanding the payment at the bank and the subsequent $400 payment, Shaddinger did not give her the jewelry.
However, it is to be borne in mind that the case presents solely a question of fact which has been determined favorably to the defendant. The trial judge's finding is entitled to great weight in matters of this sort since he heard the witnesses give their testimony and had the advantage of observing their demeanor on the stand. An *Page 627 
examination of the transcript reveals that the judge was well aware of the burden assumed by the defendant on the plea of payment and that he viewed the evidence in support thereof with caution and weighed it carefully. After doing so, he was convinced that defendant and his witnesses told the truth and that the payments about which they testified were actually made at the time and place and in the manner portrayed by them. In such circumstances, grave injustice might be done these witnesses by not concurring in the finding of the district judge in the absence of a feeling of reasonable certainty that the evidence given by them was unworthy of belief. A careful examination of the record and an analysis of the testimony of the defendant and his witnesses does not warrant such a conclusion for, while we entertain some doubt in the premises, we are not convinced that their testimony is false. In this situation, we prefer to rely upon the finding of our brother below who was in a much better position than we are to determine the veracity of their statements.
While we are unable to detect manifest error in the ruling of the trial judge with respect to his decision that the payments alleged by the defendant were actually made, we find that there is a slight error of $3 in the calculation of the amount of the balance due on the $1,000 loan. The payments testified to by the defendant and his witness are as follows: February 23, 1940, $32; July 10, 1940, $25; August 5, 1940, $25; August 12, 1940, $20; September 26, 1940, $15; November 4, 1940, $450, and some two weeks later $400, or a total of $967, leaving a balance of $33, instead of $30, which the defendant admits is due. There is some testimony in the record that Shaddinger agreed to allow the defendant credit for interest on the amounts deposited in the savings bank on account of the loan and that he stated that there was only $27 due after the final payment of $400 had been made. However, we find that the evidence is very indefinite with reference to the allowance of interest, and, if it is true that Shaddinger stated that only $27 was due, it is apparent that he made an error in calculation which cannot be regarded as binding the plaintiff.
Since we find that the judgment should be increased to $33, it is unnecessary for us to give consideration to defendant's claim that the trial judge erred in requiring him to pay the costs below. However, we feel that the small increase in the judgment does not warrant the assessment of the costs of this appeal upon the defendant.
For the reasons assigned, the judgment appealed from is amended by increasing the amount thereof to the sum of $33. In all other respects, the judgment is affirmed. The costs of the district court are to be paid by the defendant and the costs of this appeal are to be borne by the plaintiff.