34 So.2d 914

**DAVIS et al. v. HORNE LUMBER CO. et al.**

**No. 38388.**

March 22, 1948.

J. Reuel Boone, of Many, for defendants-appellants.

Fraser & Fraser, of Many, for plaintiffs-appellees.

McCALEB, Justice.

The original plaintiffs in this suit, J. T. Davis and Mrs. Mary Armstrong, were co-owners of a dwelling which was des-

stroyed by fire on December 12, 1945. Claiming that the fire was caused by sparks emitted from smokestacks of a sawmill owned and operated by a partnership doing business under the name of Horne Lumber Company, plaintiffs demanded from said partnership and its individual members compensatory damages for the loss of the residence and personal property therein contained and also for the mental anguish, physical pain and discomfort sustained by them individually.

The defendants filed answer admitting the fire but denied that it was caused by sparks from its smokestacks. Upon this issue of fact, a hearing was had which resulted in a judgment in favor of plaintiffs in the sum of $2000 for the destruction of their dwelling and $750 to Mrs. Mary Armstrong and $199.50 to J. T. Davis for loss of their respective household goods and personal effects. Defendants have appealed from the adverse decision.

Subsequent to the trial, but prior to judgment, J. T. Davis died at the age of 93 and his heirs were substituted as parties plaintiff. And, following the appeal, the other original plaintiff, Mrs. Mary Armstrong, died at the age of 89. Her heirs have been substituted by proper motion and order granted here.

█ As above indicated, the sole question involved in this case is one of fact. In consequence of the decision below, the burden is upon defendants to demonstrate

that the decision of the trial judge is obviously incorrect and not justified by the preponderance of believable evidence. Certain facts of the case are admitted and others have been established by plaintiffs without contradiction. Indeed, the only important question in conflict is whether the sparks or embers thrown out by the smokestacks fell upon the roof of the house and started the conflagration.

█ The dwelling was located on the outskirts of the town of Many, Louisiana. It was a simple, unpainted, six room structure about 40 years old, without the modern convenience of electricity. The main portion of the house, which faced north, was rectangular in shape, having four rooms, two on each side, separated by a hall. To the rear of the rooms on the east side was an ell extending south, consisting of two rooms, a dining room and kitchen. This ell was covered partly with wooden shingles and partly with composition roofing.

The defendants' sawmill plant was east of the dwelling and the smokestacks were but 300 feet away. One of these stacks extended 100 feet above the boilers and the other 90 feet. The shorter stack was equipped with a spark arrester but the taller one was not and the undisputed evidence shows that, while the boilers to which they were attached were in operation, sparks and burning embers were emitted therefrom. The sparks thus ejected from the smokestacks, when blown by the wind, constituted a fire hazard to property within the vicinity

of the sawmill so much so, that the mayor of Many, at the insistence of persons affected, complained to the State Fire Marshal about the dangerous condition. Following an examination of the premises, the fire marshal informed the defendants on September 10, 1945 that the flying embers discharged from the boilers constituted a serious fire hazard and ordered the company to immediately provide spark arresters for all smokestacks. Despite these warnings, the company did not comply. Instead, it advised the fire marshal that, due to the shortage of materials, spark arresters could not be obtained. Apparently, it did not see fit to reduce its operations to any extent but negligently permitted the dangerous condition to continue.

It is further shown by the undisputed evidence that, on two previous occasions, plaintiffs' dwelling was set afire by sparks emanating from defendants' property and that fences surrounding plaintiffs' land and other property within the near vicinity were ignited by sparks effused from the mill.

The principal argument of counsel for defendants in this court is that, notwithstanding the ever present fire hazard resulting from operations at the sawmill, plaintiffs have failed to show with reasonable certainty that the conflagration which destroyed the dwelling on December 12, 1945 is attributable to sparks and burning embers emanating from the smokestacks. He correctly states that, since no one actually saw a spark or ember from the

smokestacks fall upon the roof of the house and ignite it, plaintiffs must rely upon circumstantial evidence in proof of their demands.

In support of his contention that the evidence does not preponderate in plaintiffs' favor, counsel points with confidence to the testimony of some fourteen employees of the sawmill and that of the Acting Fire Chief of the town of Many. All of these witnesses stated that, when they arrived at the fire, smoke was coming out from under the eaves of the roof over the kitchen and that there was no blaze whatever upon the roof itself. This evidence, if believed, would effectively destroy the converse statements of Mrs. Clara Davis, who discovered the fire, and Mrs. T. I. Andries, who lived in the house, that the fire originated in the wooden shingles on the southeast portion of the roof covering the kitchen about midway between the flue and the eaves.

The difficulty with counsel's contention is that the trial judge, who had the opportunity of seeing the witnesses and hearing them testify, was of the opinion that the evidence of Mrs. Davis and her sister, being supported by certain proven facts and circumstances obtaining at the time of the fire, was entitled to greater weight than the contrary statements of the employees of the sawmill. And, with reference to the evidence of the Acting Fire Chief, the judge remarked that, while he had much confidence in his integrity, he

believed that he (Dees) was honestly mistaken in his testimony that the roof was not on fire at the time he reached the scene.

After a careful perusal of the record, we find ourselves unable to say that the trial judge committed error in his appraisal of the credibility of the witnesses and his conclusion accepting the testimony submitted by plaintiffs in preference to that of defendants. The physical facts and circumstances point strongly in plaintiffs' favor, i. e., the admitted fire hazard created by sparks discharged from the smokestacks; a strong southeast wind blowing towards plaintiffs' property from the direction of the sawmill, carrying with it sparks and burning embers, which had ignited plaintiffs' property on two previous occasions. Then, too, there is the fact that the house was not wired for electricity, eliminating any hazard from an electrical source and other evidence showing that the flue from the stove in the kitchen had just previously been examined and found to be in a state of good repair. When all of these factors are considered, there is no other sound hypothesis to account for the origin of the fire except the theory advanced by plaintiffs. See Liukart v. Yazoo & M. V. R. Co. 148 La. 349, 86 So. 894; Prescott v. Central Contracting Co. 162 La. 885, 111 So. 269.

Finally, defendants alternatively contend that, if they are liable, the case should be remanded as plaintiffs have failed to produce evidence to support a judgment for any specific award of damages. This contention is without merit as the record reveals that the award is founded upon the discretion exercised by the district judge in consideration of proof submitted by plaintiffs of the value of the real and personal property destroyed.

The judgment appealed from is affirmed.