88 So.2d 82 (1956)
Readley FOURCHEA
v.
MALONEY TRUCKING AND STORAGE, Inc.
No. 20763.
Court of Appeal of Louisiana, Orleans.
May 28, 1956.
Rehearing Denied June 25, 1956.
*83 John F. Caraway, New Orleans, for plaintiff and appellee.
Jones, Walker, Waechter, Dreux & Poitevent and John V. Baus, New Orleans, for defendant and appellant.
McBRIDE, Judge.
Plaintiff, who is 43 years old, was in the employ of defendant as a laboror in its drayage and storage business, admittedly of a hazardous nature and subject to the provisions of the Workmen's Compensation Statute. On November 8, 1954, as he was shoving some machines off a wagon, plaintiff slipped, fell and injured his back and was sent to see Dr. John D. Andrews, the employer's physician, who diagnosed the injury as a moderately severe lumbo-muscle strain and treated plaintiff for about five weeks therefor. Dr. Andrews, who is a surgeon, then concluded there were no further symptoms of an injury, so he sent him to Dr. H. R. Soboloff, an orthopedic surgeon, for an examination. When Dr. Soboloff saw plaintiff, which was in December of 1954, his opinion was that any injury plaintiff might have sustained in the accident had been cured and there was nothing to prevent him from returning to the same type of work he had been doing when the injury occurred. Dr. Andrews discharged plaintiff on January 4, 1955, and he returned to his job and worked for a few days, although he declares his back was hurting him, and that while he was engaged in loading a bale of cotton with a hook, the weight of the cotton fell on him. The next morning upon complaining to his employer's *84 representative that he could not continue to work, he was sent back to Dr. Andrews on January 26. At that time plaintiff says he told Dr. Andrews his back had never been completely well and that his condition became worse after he returned to the job. Dr. Andrews made a full examination and discerned tenderness over the spine at the site of the third and fourth lumbar vertebrae and over the lower left lumbar musculature and that the left thigh flexion and the left straight leg raising tests were positive, and so once again he started rendering treatment to plaintiff which lasted for another six weeks. On March 9, 1955, Dr. Andrews again sent plaintiff to see Dr. Soboloff, who examined him, and Dr. Soboloff reported that he could find nothing wrong. For the second time Dr. Andrews discharged plaintiff, but some few days thereafter at the instance of a Mr. Burk, the representative of defendant, Dr. Andrews resumed the treatment of plaintiff for the reason, as he states, to eliminate all possibility that plaintiff still suffered from any residual effects of the injury.
This third course of treatment continued to April 4, 1955, and then the patient was discharged finally. Dr. Andrews admits that plaintiff was still complaining of feeling no better and of pain in his back.
Plaintiff filed this suit against Maloney Trucking & Storage, Inc., claiming workmen's compensation at the rate of $30 per week for a period of 400 weeks under LSA-R.S. 23:1221(2), and after a trial on the merits in the lower court he recovered judgment for compensation at the weekly rate of $27.30 for a period not to exceed 382 weeks. Eighteen weeks' compensation had been paid. The judgment also made an allowance for future medical expenses. Defendant has appealed.
After his discharge by Dr. Andrews on April 4, 1955, plaintiff sought no further medical treatment until October 18, 1955, when he went to the Charity Hospital in New Orleans. The certified copy of the hospital record shows that he was discharged about a month later for the reasons: "Symptoms are not clear. Complains of lack of compensation from insurance papers."
The defense tendered is that plaintiff has been completely cured and is fully able and competent from a physical standpoint to return to and do any of the duties of his occupation and that the compensation already paid is all he is entitled to receive from defendant.
Plaintiff produced only one medical expert as a witness, namely, Dr. Blaise Salatich, who examined him on June 10, September 7 and December 1, 1955. Dr. Salatich testified that he found a consistent pattern of positive symptoms of an injury on all three examinations, such as, pain through the right lumbosacral region, numbness in the right lower extremity, moderate erecti-spini muscle spasm, restricted trunk movement, and positive body tests. His opinion of the X-ray showings was that there is a narrowing of the fifth lumbar vertebral interspace which gives him the impression that the patient had sustained a torsion exertion-type low back injury involving a reptured intervertebral disc with herniated nucleus pulposus and nerve root compression. Dr. Salatich states that he found plaintiff to be cooperative in respect to his several examinations and that he felt plaintiff was sincere in his complaints. He states that plaintiff is totally disabled from returning to work.
Dr. Andrews, called by defendant, outlined his course of treatment which need not be detailed. His opinion was that when plaintiff was last discharged there was absolutely no reason why he could not return to his occupational duties.
Dr. Soboloff, the orthopedic surgeon to whom plaintiff had been sent by Dr. Andrews, stated that he not only examined plaintiff on the two occasions already mentioned, but that he also saw him in September and December of 1955. His opinion was there was no residual disability which would prevent plaintiff from returning to work. Dr. Soboloff claims he detected some inconsistent responses by plaintiff to the various tests and called plaintiff's complaints of pain from the neck down to the *85 feet incompatible with nature's distribution of the nerves in the anatomy of the human body. He admitted there was atrophy of the right calf but stated that this condition resulted from the voluntary favoring of the extremity. The witness in commenting on the narrowing of the interspace between the vertebrae said that he believed this was no more than a normal condition which might be expected in a person of plaintiff's age and it did not indicate a ruptured disc.
Plaintiff was examined by Dr. Irvin Cahen, an orthopedic specialist, on September 27 and December 2, 1955. Dr. Cahen, testifying for defendant, stated he reached the conclusion that whatever restrictions in motion were demonstrated by the plaintiff were voluntary because he gave inconsistent responses to several tests and his characterization of plaintiff's complaints was that they were "bizarre." The summation of Dr. Cahen's testimony is that he found no orthopedic evidence of residual disability during either examination and he was certain there was no rupture of an intervertebral disc nor was there anything at all physically wrong with plaintiff. He made the statement that plaintiff did not cooperate with sincerity during the examinations.
The plaintiff testified that he had suffered pain since the accident; that he has worn a back corset; that the pain occurs in the middle back and he cannot stoop; that his right side and leg "get sleepy" and "stiff like"; that he uses a cane while walking; and has to be assisted in arising from his bed. He declares he cannot engage in any strenuous exercise.
Plaintiff's wife stated he had always been a regular worker but he is now disabled; since the inception of his injuries he has continually complained of back pains, and she had to procure a hard bed for him to sleep on. She says plaintiff's back is so disabled that in the morning she has to call upon a friend to assist him in arising from bed. She also stated that they have been relegated to living off her earnings together with such assistance as their friends give them.
A woman named Lightfoot, who claims to be a practical nurse, testified that she has known plaintiff for two years and that while he had been a steady worker, he has not been able to work since he was hurt and that he now walks about with the aid of a stick. She sees him almost daily and has been called upon often to massage his back.
Auguer, a friend, testified that plaintiff was a steady and regular worker but that he knows that since April 1955 he has not been able to work. The witness stated that plaintiff complains of back pains and that he has helped him get out of bed in the mornings.
Defendant contends that the admission of the lay testimony was improper and makes the argument that the statements of laymen can be considered on the question of disability only when there is a hopeless and irreconcilable conflict in the opinions of the medical experts, and that the conflict contemplated by the jurisprudence does not exist in the instant case for the reason that the medical testimony favoring defendant's cause is "almost onesided," thus leaving no room for a consideration of any lay testimony.
A court, when determining the degree of the claimant's disability in a proceeding brought under the Workmen's Compensation Statute, must rely to a great extent on the findings and the sworn statements of those persons trained and skilled in the callings of medicine and surgery. See Lindsey v. Twin City Motor Co., Inc., La.App., 181 So. 598, 600.
But as every court well knows, very seldom do the opinions of medical expert witnesses in compensation matters coincide on the paramount question in the case, i. e., the extent of the claimant's disability. Insofar as back injuries are concerned, the experts are usually more than ever sharply divided in their opinions. Dr. Cahen recognized it to be a fact that it was not uncommon for physicians to disagree in cases involvins the type of back injury plaintiff complains of as respects the significance of symptoms and the time at which the symptoms manifest themselves.
*86 It is regrettable that these experts, to whose testimony the court naturally must look for guidance regarding a particular injury and the period of the claimant's disability, can differ so widely in their opinions and views so as to render their opinions of so little assistance that they must all but be disregarded.
Just such a state of affairs in Lindsey v. Twin City Motor Co., Inc., et al., supra, evoked from the Second Circuit Court of Appeal the following comment:
"* * * If the building of records such as the one under consideration continues, undoubtedly the lawmakers of this state will provide for the creation of commissions of physicians to examine injured claimants in physical injury suits and make recommendations to the respective courts regarding their findings."
In many of the cases where there occurred an irreconcilable conflict of medical testimony as to whether the claimant is disabled from performing his occupational duties as a result of his injuries, courts have felt authorized to resort to the testimony of the claimant and his lay witnesses in order to make a just and proper determination of the extent of the disability. See Phillips v. Yazoo & M. V. R. Co., La.App., 183 So. 43; Phillips v. Le Blanc Bros. Contracting Co., La.App., 17 So.2d 36; Jones v. Atlantic & Gulf Stevedores, Inc., La.App., 38 So.2d 653; McElroy v. Kennedy, La.App., 84 So.2d 256. If such recourse could not be had, sometimes it would be well nigh impossible to pass on the claim for compensation.
Contrary to counsel's contention that no conflict exists in the medical testimony, a reading thereof reveals that the experts entertained divergent opinions as to whether plaintiff is a disabled workman. A comparison of the testimony of plaintiff's doctor with that given by the defense experts leaves us in a state of bewilderment. According to Dr. Salatich, the plaintiff was a most cooperative patient throughout the three examinations and his conclusion is that plaintiff sustained injury that absolutely destroys his ability of returning to the laboring work he was performing when the accident befell him. On the other hand, the testimony for defendant portrays a picture of a most non-cooperative individual who possesses no injuries whatsoever and who is attempting to perpetrate a fraud on the court by feigning disability.
The trial judge was unable to decide the question of the extent of the disability of the claimant on the basis of the medical evidence, and he made mention in his reasons for judgment: "The medical testimony produced by each litigant is contradictory." We agree that this is so and, therefore, we think that the admission of the lay testimony was proper and that it became necessary to consider this testimony in order to resolve the question whether plaintiff was able to return to his former occupation.
According to our appreciation of the record, there is not the "one-sidedness" in the expert testimony as is alluded to by counsel for defendant. What we find is that the defendant was able to and did produce three physicians who swore that the plaintiff is not disabled whereas plaintiff only had one medical expert to testify on his behalf. But this does not mean that because defendant was able to present the evidence of the greater number of experts that their testimony should be accepted and that the testimony given by plaintiff's lone expert should be rejected. Courts have said time after time that witnesses are not counted, rather their testimony is weighed. In Thomas v. Harman, La.App., 170 So. 365, 366, it was said:
"It is to be noted that plaintiff's witnesses, * * *. This, however, does not necessarily mean that the preponderance of the evidence in the case is with the plaintiff. It is provided by the law of evidence that the testimony given should be weighed, and that its probative value is not to be determined by the number of witnesses testifying. Reed v. Andrepont (La.App.) 142 So. 184; Hudson v.

*87 Jackson Brewing Co., 4 La.App. 549; Kemp v. Wamack, 2 La. 272."
In its opinion in Bean v. Higgins, Inc. (Columbia Casualty Company) 230 La. 211, 88 So.2d 30, 32, the Supreme Court said:
"* * * Mere numerical numbers of experts is not sufficient for a determination of a decision in any case. * * *"
All that a compensation claimant is required to do to be successful in his suit is to establish the legitimacy of his claim by a clear preponderance of the evidence and with the same legal certainty as any other plaintiff. The trial judge must have believed that the probative value of Dr. Salatich's testimony was no less than that of the three experts who appeared for the defense else he would never have concluded: "The medical testimony produced by each litigant is contradictory." The fact that judgment was rendered in favor of plaintiff makes it certain that the judge was of the opinion that the lay testimony supported Dr. Salatich's opinion as to plaintiff's disability and that plaintiff had therefore fulfilled the requisite of law that he prove his case by a preponderance of the evidence.
To prove a case by a preponderance of the evidence simply means evidence must be produced which is of greater weight or is more convincing than that which is offered in opposition to it. Edwards v. Shreveport Creosoting Co., Inc., 207 La. 699, 21 So.2d 878.
We are unaware of any law providing or any authority holding that the testimony of a single witness may not constitute a preponderance of evidence in a suit brought by an injured workman for compensation. The general rule as stated in Wigmore on Evidence, Vol. 4, 2d Ed.,.p. 308, is:
"Credibility does not depend on numbers of witnesses. * * *
"In general, the testimony of a single witness, no matter what the issue or who the person, may legally suffice as evidence * * *." (Italics by the author.)
Defendant intimates that plaintiff "injected a conflict into the medical testimony" by presenting against defendant's experts a physician who is unskilled and unqualified. We refuse to believe that Dr. Salatich was called as a witness in order that plaintiff would have in the record "some" testimony which would conflict with the defendant's evidence, thus opening the door to the admission of lay testimony.
We have carefully read and analyzed Dr. Salatich's testimony, and we find not a word therein that could be considered self-contradictory or which appears to be improbable or inconsistent. There certainly is nothing in the testimony which destroys its effect and no reason can be assigned which would require the application of the maxim falsus in uno, falsus in omnibus.
We paid close attention to the oral argument made by counsel for appellant and have carefully sifted what is said in their brief, and we can only say that they have failed to point out to us any defects either in the testimony of Dr. Salatich or the evidence given by lay witnesses who testified as to plaintiff's disability.
The only seeming inconsistency is Dr. Salatich's statement that a patient with a ruptured disc lists to the side involved. The medical text used by the defendant in attempting to impeach the witness does not convince us that Dr. Salatich's opinion was medically unsound. The text, which Dr. Salatich claimed is obsolete, shows that case studies reflect that "usually" there is a listing away from the involved side, while Dr. Salatich stated that the latest theory is that listing to the involved side is the most usual.
Under our jurisprudence there is a presumption which exists in favor of the correctness of any judgment appealed from. The Supreme Court has said that the burden rests on the appellant to demonstrate to the court that the trial judge's *88 decision is erroneous and not justified by the law and the evidence. Davis v. Home Lumber Co., 213 La. 429, 34 So.2d 914. To reverse the judgment it is necessary for the appellate court to point out errors in the findings of facts by the judge below sufficiently important to justify a reversal. Wilcox v. B. Olinde & Sons Co., Inc., La.App., 182 So. 149.
The Supreme Court has laid down a formula for determining whether a judgment is to be reversed when there exists an irreconcilable conflict in the testimony. Where there is this conflict the reviewing court is not to reverse the trial court's judgment when the evidence of the successful party, if considered by itself, is sufficient to sustain the judgment. Rhodes v. Sinclair Refining Co., 195 La. 842, 197 So. 575.
In an earlier case, Thomason v. Kansas City Southern Ry. Co., 122 La. 995, 48 So. 432, the Court said in effect, if there be testimony in the record which, if believed, would justify the conclusions of the trial judge touching a certain fact, conclusions in respect to that fact will be adopted unless manifestly erroneous.
In Ford v. Ford, 142 La. 235, 76 So. 622, in a syllabus the Court said that although appellate courts are required by the Constitution of Louisiana to decide questions of fact as well as of law in civil cases, an appellate court is constrained to defer largely to the better judgment of the trial judge regarding a question of fact when the conflict in the testimony cannot be reconciled or explained on any other theory than that the witnesses on the one side or the other committed perjury.
All of the above pronouncements, it seems to us, have particular application to the instant case.
If we use the formula set forth in Rhodes v. Sinclair Refining Co., supra, we would have before us the testimony of Dr. Salatich and the lay witnesses, and this taken by itself would present a perfect case for the plaintiff, as the testimony goes to show beyond any doubt that he sustained a serious injury which still exists and which has destroyed his physical ability to return to his occupation.
On the basis of Thomason v. Kansas City Southern Ry. Co., supra, the judgment cannot be reversed for there is testimony in the record which upholds the trial court's conclusion as to the fact of plaintiff's disability.
Furthermore, under Ford v. Ford, supra, we could only reverse the judgment on the theory that Dr. Salatich and plaintiff's other witnesses were guilty of giving perjured evidence. We are unwilling to say they did. In Shaddinger v. Albeanese, La. App., 11 So.2d 624, 627, we said:
"* * * In such circumstances, grave injustice might be done these witnesses by not concurring in the finding of the district judge in the absence of a feeling of reasonable certainty that the evidence given by them was unworthy of belief. * * *"
Counsel for defendant point out that the defense experts are all reputable and well-qualified medical practitioners, and we concede that the testimony of each of the doctors shows that he is of eminent standing in his respective medical specialty. On the other hand, Dr. Salatich's qualifications come in for violent attack, and we are referred to Smith v. W. Horace Williams Company, Inc., La.App., 84 So.2d 223, 227, wherein he appeared as an expert medical witness on behalf of the plaintiff. It is true, as we pointed out in that case, that Dr. Salatich has not been admitted to membership in the American Board of Orthopedic Surgery, but as we said:
"* * * that fact in our opinion would not justify refusal to accept his testimony as an expert in that specialty to which he has devoted himself since his graduation in medicine, though it might affect the weight which should be given to his opinions when contradictory to opinions of those who have qualified for admission in that well recognized group of specialists. * * *"
*89 We did not reject Dr. Salatich's testimony in the cited case, although the opposing witnesses, just as they are in the instant case, were members of the American Board of Orthopedic Surgery. We affirmed the judgment in favor of plaintiff on the basis there was no manifest error in the judgment saying:
"* * * However, in view of the finding of the District Judge we think that it would not be proper to say that there is manifest error and therefore we hesitatingly apply the well established doctrine that the finding of a District Judge on a question of fact should not be disturbed unless manifestly erroneous."
In the Smith case we also discussed the fact that Dr. Salatich had laid much stress on the number of "cases" which he had "won" in various courts as compared with the few which he had "lost," but we do not think that because the doctor considered that when he appeared as a witness he "won" or "lost" the cases that this would constitute grounds for saying here that when he testified he was giving perjured testimony.
Aside from the testimony adduced on behalf of plaintiff, other circumstances in the record tend to indicate that plaintiff still suffers a residual as the result of his accident. When plaintiff went to him for the second time, Dr. Andrews admits there was tenderness over the spine at about the third and fourth lumbar vertebrae and also over the lower left lumbar musculature. Dr. Andrews also mentioned that the left thigh flexion test and the left straight leg raising test were positive and it was because of these findings that he resumed the giving of treatments to plaintiff. We cannot overlook the probability that when Dr. Andrews discharged the plaintiff the first time the discharge was premature. The three-eighth-inch atrophy of plaintiff's right leg was attributed by Dr. Soboloff to disuse of the member; however, the doctor admitted that the atrophy could be a symptom in nerve root compression cases. Dr. Soboloff conceded, also, that according to the record of Charity Hospital, plaintiff had pains in the back and "once or twice he had muscle spasm," which indicated to him that the physicians at the hospital found a significant amount of objective symptoms.
We are impressed, as was the trial judge, by plaintiff's good work record. He was in the employ of defendant for twenty years and worked steadily. He asserted no previous claims for compensation. It appears he was held in respect by his employer, so much so that it was at the instance of Mr. Burk of the defendant company that Dr. Andrews started in the third course of his treatment of plaintiff.
Whenever there is conflict in the testimony that cannot be reconciled, it becomes necessary to pass primarily upon the question of the veracity of the witnesses. To do that the trial judge is in the more advantageous position because of his having the opportunity of hearing the witnesses and of observing their demeanor while on the witness stand. In this case the judge had the additional advantage of observing plaintiff's condition. The Supreme Court said in Successions of Scardino, 215 La. 472, 40 So.2d 923, 927;
"* * * And that more advantageous position is the reason for the well recognized doctrine that where the credibility of witnesses is involved the finding of fact of the trial judge must be given great weight and should not be disturbed unless manifestly erroneous."
The judge, in speaking of the lay witnesses, observed, "They appear to be truthful," and in referring to plaintiff said his "statements to all doctors were consistent" and his "appearance in court is such that the court believes he is unable to return to the duties he was performing on November 8,1954."
The only error we can find is the allowance for future medical expenses. The Workmen's Compensation Statute makes no provision for medical expenses the injured workman might incur at some future time. However, we believe that plaintiff's right to assert any claim in the *90 future for whatever amount he may incur for his treatment in connection with his injuries should be reserved. See Boykin v. We Hope Gas & Oil Co., Inc., La.App., 2 So.2d 528; Rosenquist v. New Amsterdam Casualty Company, La.App., 78 So.2d 225; Wilson v. New Amsterdam Casualty Company, La.App., 86 So.2d 556.
It is ordered, adjudged and decreed that the portion of the judgment appealed from which runs in favor of plaintiff "for all medical and incidental expenses up to Five Hundred ($500.00) Dollars, subject to a credit of Two Hundred Eighty-nine ($289.00) Dollars already paid" be and the same is hereby reversed, and the judgment is amended so as to reserve plaintiff's right to make claim for whatever medical expenses he may incur in the future in connection with his injuries, and as thus amended and in all other respects, the judgment is affirmed. Defendant is to pay the costs of this appeal.
Reversed in part; amended and affirmed in part.
JANVIER, J., dissents with written reasons.
JANVIER, Judge (dissenting).
There is not that substantial conflict in the medical evidence which should be found if we are to resort to and depend solely upon lay evidence. The medical testimony is, in my opinion, overwhelmingly to the effect that plaintiff can return to work with no disability. Why then should we look to the evidence of pastors, relatives and friends for a determination of a medical question?
I respectfully dissent.