McBRIDE, Judge.
Early on the afternoon of September 18, 1951, two automotive vehicles, viz., a dump truck and a Chevrolet sedan, collided in the intersection formed by the outbound roadway of Jefferson Highway and Shrews-bury Road in Jefferson Parish. Said highway is a wide thoroughfare having two roadways for vehicular traffic, these being separated by a neutral ground fifteen feet wide. Each of the roadways accommodates two traffic lanes.
The dump truck was owned by F. H. Marquez and driven by Acosta, his employee. The sedan was owned and driven by Arvell G. Cross and riding therein as a passenger was Mrs. Ruth Juanita Ray Cross, his wife. This joint suit is brought by Mr. and Mrs. Cross against the owner and’ driver of the dump truck, in solido; Mrs. Cross claims damages for her physical injuries, while Cross is endeavoring to recover for the expenses of his wife’s medical treatment and also for property damage sustained by his car.
Defendants have appealed from a judgment in plaintiffs’ favor.
The movement of traffic at the intersection in question is controlled by the conventional semaphore light signal. The Marquez dump truck had been traveling on. the inbound roadway of Jefferson Highway in the lane next to the neutral ground, and closely following the dump truck were the: automobiles of Turnage and LaBarre, in> that order, the drivers of all three of these vehicles intending to make a left turn into Shrewsbury Road in order to go in the direction of Airline Highway. Such turn as-the drivers contemplated making is required by local ordinance to be executed only on a red signal light.
The Marquez truck first made the turn and was followed by the Turnage car which also negotiated the turning maneuver, La-Barre stopped his car at the intersection.
The truck passed across the neutral' ground area without incident, and after almost crossing the outbound roadway of Jefferson Highway, it was run into by the front end of the Cross car which came from the truck’s right. We conclude that the blow to the dump truck was about its right rear dual wheels, notwithstanding Cross’s, statement that the truck ran into his car.
Every eyewitness agrees that when Acosta turned left into Shrewsbury Road,, an automobile of which Counce was the operator was stopped on the opposite roadway of the highway at the intersection' waiting for a signal light change. This car was located in the lane next to the neutral ground. Cross drove past the stationary Counce vehicle on its right and then crashed into the truck as aforesaid.
Plaintiffs charge that the collision resulted from gross fault on1 Acosta’s part;, defendants, after a denial of any negligence which could be attributed to Acosta, make allegations of negligence against Cross. An examination of the reciprocal charges of negligence would serve no useful purpose-—suffice it to say each driver is said to. *119 have proceeded forward on an unfavorable light signal and a determination of the case is to turn on this issue alone.
Cross admits he never saw the Marquez truck until a split second before the impact. Mrs. Cross was not looking and her testimony is not helpful, except she said: “We hit the truck.” Plaintiffs’ case rests solely on Counce’s testimony. He stated that he stopped at the intersection to await the appearance of a green light and that when this favorable signal showed, he started forward but then noticed the dump truck make the left turn. Counce brought his car to an abrupt stop after traveling a few feet and barely avoided an accident with the truck. He saw no other vehicle except the dump truck make the left turn. It was after Counce made the emergency stop to avoid running into the truck that the Cross car passed to his right and hit the truck.
Turnage and LaBarre, who testified for the defense, were unanimous in their statements that the light was red when Acosta turned into Shrewsbury Road and that this signal was proper for such movement.
Acosta testified he observed the light when his truck was one-half block before reaching the intersection. At first he said it was green, but subsequently corrected himself by stating the signal was red. He claims he negotiated the turn at six or seven miles per hour and went on to say he shifted his gears in the neutral ground area and continued forward into the outbound roadway where the crash occurred.
Turnage’s testimony is that his car had been following the truck about two and one-half car-lengths and that he also made the turn on a red light. He was forced to stop in the neutral ground area because of the accident, but otherwise he says he could have crossed the outbound lane on the proper light.
LaBarre was not able to make a turn because the light changed to amber; his statement is that the amber color showed just as he reached the intersection which necessitated his stopping.
The above embraces about all of the testimony which has any pertinency to the issue to be solved. As usual in cases of this kind, the eyewitnesses entertain different opinions as to what actually happened and besides the testimony is not free of inconsistencies. The transcript also reflects disputations concerning facts having no relevancy, such as whether the defense witnesses were able to or did see the Cross car before it emerged into the intersection and whether it was traveling with its wheels on the shoulder of the roadway.
The trial judge entertained the opinion that the evidence preponderated in plaintiffs’ favor and rendered judgment accordingly. We are well aware that the case involves only a factual issue and that in such circumstance, where the matter is decided in the court below upon conflicting evidence, great weight is accorded to the finding of the trial judge on the solid theory that he is in the superior position to determine the credibility of the witnesses and the weight to be placed on their statements.
Reviewing courts have always been extremely reluctant to reverse such factual findings and unless patent error appears will not do so. But occasionally it is easier for the appellate court to perceive fallacies and detect certain circumstances which might have escaped notice of the trial judge, and we believe this is particularly so in a case such as this where the matter is tried piecemeal. The first hearing was on January 23, 1953, when six witnesses testified, and then the trial was adjourned to a future date for the taking of further evidence. A period of twelve months elapsed before testimony of the witness Counce was taken.
We find serious and manifest error in the judgment. We could not be convinced otherwise from Counce’s testimony than that Acosta negotiated his left turn on a red signal. Had the unfavorable green signal been showing as Counce declares it *120 was, it is a foregone conclusion that he, who was stopped at the intersection waiting for the same green light, would have immediately accelerated his car, and it is reasonable to suppose he would have cleared the intersection before Acosta could reach the outbound roadway, and it would have been necessary to stop to avoid an accident with the truck. Cross heedlessly darted from the rear and to the right of Counce’s car into the intersection and ran into the side of the truck. He thus explains his actions :
“ * * * I saw the other car pull out and I was only one car length away and I pulled over to the side of him and I saw a brake-light go on and I slapped my brakes on too.”
We fail to find that Acosta “ran” an unfavorable light or was otherwise negligent.
The judgment appealed from is reversed, and it is now ordered, adjudged and decreed that plaintiffs’ suit be dismissed at their cost in both courts.
Reversed.