GLADNEY, Judge.
This is an action by four surviving children and two grandchildren of Willie R. Sharman, an eighty year old widower, who received fatal injuries on November 20, 1957, when struck by an automobile operated by the minor daughter of John Kuprionis. The accident occurred in the intersection of South Trenton Street and Louisiana Avenue, Ruston, Louisiana, about 7:25 o’clock p. m., when the night was dark and rainy. After trial there was judgment rejecting plaintiffs’ demands, hence this appeal.
Appellants allege the accident was caused solely by the negligence of the operator of the automobile, Danute Kuprionis, in driving at a dangerous and excessive rate of speed, in failing to yield the right-of-way or passage across the street to a pedestrian, and in failing to maintain and keep a proper lookout. The respondents der£y any fault on the part of Miss Kuprionis, and have specially plead the contributory negligence of the deceased in failing to keep a proper lookout for motor vehicles, and in stepping into a street against the traffic control light outside of a pedestrian crosswalk. Defendants filed exceptions of no cause or right of action as to the claims of the grandchildren joined as plaintiffs in this cause.[1]
At the intersection where the accident occurred South Trenton Street runs north and south and Louisiana Avenue runs generally east and west and intersects South Trenton Street, although it does not continue straight across, but forms a “T” intersection, and some distance north of the intersection continues toward the west. South Trenton Street is of concrete construction and is forty-nine feet in width. Facing east at the intersection is the First Baptist Church, located on the west side of South Trenton Street and the Lincoln Parish Court House is on the opposite side of the same street. Traffic control at the intersection is from two semaphore lights, one of which regulates traffic proceeding northerly along South Trenton Street and traffic proceeding westerly along Louisiana Avenue. Another semaphore light regulates traffic proceeding southerly along South Trenton Street and traffic proceeding easterly along’ Louisiana Avenue. A marked walkway for pedestrians crosses South Trenton Street near the south line of Louisiana Avenue. The intersection is not well lighted and is shaded by trees which substantially affect its illumination, especially when the night is dark and it is raining.
Immediately before the accident, Danute Kuprionis was driving her fathers’ Chevrolet automobile southerly along South Trenton Street and as she approached the intersection with Louisiana Avenue, the traffic control light registered green in her favor. *317 As she crossed the intersection, traveling in her right lane of traffic, she felt something strike the right front fender of the automobile and saw the body of Sharman. She immediately stopped her vehicle, parked it, and went back to where she found the body lying in the street. The witness testified that at the time she entered the intersection the traffic signal light was green in her favor and she was proceeding at a rate of speed of about twenty miles per hour. Her lights were on dim and the windshield wipers were working. She said she did not sound her horn and stated further, that at no time prior to contact between her automobile and the body of Sharman, did she see the deceased.
At the moment of the accident Mrs. John L. Matthews, who was driving west on Louisiana Avenue, was stopped at the intersection because of an adverse light. She testified that while waiting in this position she did not see any one crossing South Trenton Street between the courthouse square and the church; that she observed a car going south on South Trenton Street and it crossed the intersection on a green light at a speed of about twenty miles per hour; and that the night was dark and it was at the time raining, a slow drizzle. As the light changed Mrs. Matthews proceeded forward, and upon seeing the deceased lying on the street she stopped her automobile to avoid running over the body. This was the first time, she said, she noticed Sharman in the intersection. She described the clothes worn by the deceased as being dark, and said he was wearing a hearing aid and did not have a hat.
Another witness, Scott Monroe Wea-thersby, Jr., was approaching in a car for the purpose of meeting his father who was at a church meeting scheduled to be out about 7:30 o’clock p. m. At the time Wea-thersby was going north on South Trenton Street. He testified it was a dark night and drizzling rain. He said he did not notice any pedestrians crossing South Trenton Street, and observed the spot where the impact occurred was dark. The first time he saw Mr. Sharman, his body was in the air and simultaneously he saw the car which struck the deceased coming toward him. He stopped his car in a vacant parking place and ran to the church for the purpose of summoning an ambulance. He described the clothes of the deceased as being dark and said he observed that Sharman wore a hearing aid and glasses.
Another motorist, Wilbur Arthur Whitaker, testified that about 7:30 o’clock p. m. he was proceeding north on South Trenton Street and had passed through the intersection with said street with Texas. He observed that the light ahead at the subject intersection, about a block away, was green and a car was proceeding through the intersection on the green light. He said he did not see any person cross in front of the headlights of that car, nor did he see the car strike the deceased. He stopped his automobile when the car in front of him stopped, and then he noticed the body of the deceased lying on the pavement. Whitaker described the night as being dark with a light drizzle falling. This witness was a twenty-seven year old student at Louisiana Tech and was studying mechanical engineering while working for an electrical company. He was asked to describe the lighting conditions prevailing at the intersection at the time of the accident. He testified there was nothing unusual about the lighting in that there was no special lighting at that particular point; that the only illumination was from a street light on the corner across from the church and such as was made by the two traffic controlled lights.
Robert W. Edwards, a city police officer, arrived at the scene of the accident a few moments after it occurred. He ascertained the body of the deceased was fifteen feet from the west curb of South Trenton Street and twenty-five feet south of an expansion joint in the concrete crossing South Trenton Street in line with the south line of Louisiana Avenue and running from the west to the east line *318 of Trenton Street. He described the pedestrian crosswalk as being marked with yellow paint and said that parking on the west side of Trenton Street in front of the First Baptist Church was at an angle. He testified the weather was bad in that it was raining and the night was dark. He used a flashlight to check the body of the deceased.
The testimony of the several witnesses who testified gives no indication Danute Kuprionis was exceeding any speed limit fixed by the city traffic ordinance of Rus-ton, and uncontrovertably establishes Miss Kuprionis entered the intersection upon a favorable traffic light. It also establishes that Miss Kuprionis did not see the deceased before he was struck by her automobile. Neither was Mr. Sharman observed before the accident by Mrs. John L. Matthews and Mr. Scott Monroe Weathersby, either of whom was in a position from which the deceased could have been observed if he was engaged in crossing South Trenton Street. With these premises so established, the remaining issues requiring our consideration are -whether Miss Kuprionis was being properly observant, and if not, whether the deceased was guilty of contributory negligence.
Counsel have sought to establish more ■or less by theory alone, that the deceased was engaged in crossing the street at a time when the traffic light turned from red to green and the operator of the ICuprionis automobile should have observed the deceased and avoided striking him. In support of this postulation counsel introduced evidence to show the deceased, who lived on the east side of South Vienna Street customarily went to attend services at the First Baptist Church by walking northerly to the corner of South Vienna Street and Louisiana Avenue, and then proceeded one block west •along Louisiana Avenue when he arrived •at the intersection of South Trenton Street .and Louisiana Avenue. Plaintiffs believe •that upon arriving at this intersection on the night in question, Mr. Sharman probably observed the traffic light to be in his favor, proceeded to cross South Trenton Street toward the church entrance, and that while he was thus crossing the street the light turned from red to green, and at that moment Miss Kuprionis drove into the intersection and struck Mr. Shar-man in the pedestrian lane near the west curb. This postulation is not substantiated by any evidence.
The testimony of Mrs. John L. Matthews and Weathersby that they saw no one cross the street seconds before the accident, serves to refute the argument, for these witnesses were in a position where they could see the entire intersection and undoubtedly they would have observed Mr. Sharman if he was crossing the street. Another factor which rejects the position taken by plaintiffs is a photograph of the Kuprionis automobile which exhibits a dent in the right front fender which strongly suggests that the body of the deceased came in contact with the right front fender of the Chevrolet automobile at a point behind the right headlight. From this circumstantial evidence it is not unreasonable to infer the deceased walked into the street from the west curb and into the side of the automobile.
The evidence as a whole, we think, fails to establish with any degree of certainty, negligence on the part of the operator of the automobile. The prevailing rainy weather with poor illumination at the intersection made for poor visibility. It was established the Kuprionis automobile was being driven at a reasonable rate of speed and in a careful manner. The only plausible hypothesis of the case, in our opinion, is that the plaintiff suddenly stepped out from behind a parked car in front of the church and was instantaneously struck by the automobile. This appears to have been the ratione decidendi of the trial judge. The decision of a trial judge as to a factual situation should *319 not be disturbed on appeal unless error is manifest. Bethley v. Cochrane, La.App. 1955, 77 So.2d 228; Fourchea v. Maloney Trucking & Storage Inc., La.App. 1956, 88 So.2d 82; Webre v. Jones, La.App. 1957, 92 So.2d 110; Roux v. Attardo, La. App.1957, 93 So.2d 332; Cross v. Marquez, La.App.1957, 94 So.2d 117; Pierre v. Galloway, La.App.1957, 96 So.2d 916; Banks v. Food Town, Inc., La.App.1957, 98 So.2d 719.
The judgment is hereby affirmed at appellants’ cost

. Grandchildren are not included in the word “children”, art. 2815 of the Civil Oode, giving a right of action for damages for death. Hunt v. New Orleans Ry. & Right Co., 140 La. 524, 73 So. 667; Walker v. Vicksburg, S. & P. Ry. Co., 110 La. 718, 34 So. 749; Jackson v. Lindlom, La.App., 84 So.2d 101. Hence, the exception has merit, but in view of our conclusion of nonliability it is needless to belabor this issue.